Steven Lance PINDER  *v.*  STATE of Arkansas

CR 02-1289                                    166 S.W.3d 49

Supreme Court of Arkansas
Opinion delivered May 6, 2004

*Byron Thompson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Chief Justice. Appellant Steven Lance Pinder was tried and convicted in the Columbia County Circuit Court of two counts of rape of his stepdaughter. The trial court sentenced him to life imprisonment on each count. Appellant brings two points on appeal: (1) whether there was sufficient evidence to find appellant guilty of rape as alleged in Count 1 of the Information, and (2) whether there was sufficient evidence to find appellant guilty of rape as alleged in Count 2 of the Information. We find no merit in appellant's argument, and we affirm.

### Facts

On November 16, 2001, Ashley Jackson, the victim's best friend, confided in Jo Ann Best, a school counselor, that A.P. had said her father was sexually abusing her. A.P. then admitted to Ms.

Best, in the presence of Ashley, that appellant was sexually abusing her. Ms. Best notified the authorities, who questioned A.P. that same day.

Investigator Emily Hampton, employed by Crimes Against Children with the Arkansas State Police, questioned A.P. on the afternoon of November 16, 2001. Hampton contacted Doug Moore with Children and Family Services since Moore would be responsible for developing a health and safety plan, to ensure that A.P. would be safe and would have no contact with appellant. During the initial interview, the victim reported to Hampton that appellant had come into her room on various occasions. He had touched her with his hand, with his penis, and had touched his penis to her vaginal area.

Later that day, Pinder arrived at the school to pick up A.P. and her younger sister. Hampton explained to appellant the allegations that had been lodged against him. Hampton informed appellant that he would either have to leave the family home or the family would have to leave. Appellant agreed to leave the family home, but did not deny the allegations.

Special Agent Joe Lee Wright, a special investigator with the sex-crime division, testified that he took a sample from A.P.'s mattress, where she indicated some of the incidents occurred, and the comforter to the State Crime Lab. Melissa Myhand, a forensic biologist with the Arkansas State Crime Lab, testified that she tested the mattress and it tested positive for semen in six spots. Forensic Biologist, Terry Rolfe, performed the testing to extract and identify Pinder's DNA. Rolfe also performed the testing to extract and identify the DNA in the semen that was found on the victim's mattress. Rolfe determined that the DNA identified from the mattress was consistent with the DNA that was extracted from Pinder's blood samples, with a 1 in 855 million probability.

Ivy McGee-Reed, a family medicine physician in Magnolia, examined A.P. on November 21, 2001. When Dr. McGee-Reed asked A.P., "Why are you here today?" she answered, "I'm here because my father touched me where he shouldn't have." A.P. informed Dr. McGee-Reed that appellant had touched her with his mouth, fingers, and penis. After a gynecological examination, the doctor found that A.P. did not have a hymen, indicating, on this young girl, that there had been some chronic or long-term sexual contact, as opposed to a tear which would have indicated more a recent or acute event.

At trial, Melissa Pinder, the victim's mother and wife of appellant, testified that A.P. first learned that Pinder was not her biological father at the examination conducted by Dr. McGee-Reed. Melissa also testified that approximately six months prior to November 2001, she awoke in the middle of the night and found appellant lying, naked, on A.P.'s bed. Melissa told appellant to get dressed and go to the living room, where Pinder stated, "This is going to sound sick, but I, you know, I have been having these sexual problems and I felt that if I just laid in here and pretended she was somebody else, maybe I could get an erection." After having this discussion with appellant, Melissa went to check if A.P. was awake and dressed. Melissa found A.P. dressed but asleep. The next morning, Melissa asked A.P. if appellant was doing anything to her, to which she replied, "No."

Lisa Pinder, appellant's biological younger sister, testified that she was sexually assaulted by Pinder when she was twelve or thirteen. Lisa stated that appellant never raped her, but he did wake her in the night with his hands on her breasts and vaginal area. However, there was never a police report filed regarding this incident.

Vonnie Pinder, appellant's biological daughter, testified that she had "recollections during my childhood of being assaulted sexually by my father." Vonnie stated that the sexual abuse started when she was six years old. After Vonnie admitted the sexual abuse to her mother, the family left appellant. This abuse was reported in Louisiana, where it occurred, but was unfounded. At trial, Vonnie also admitted to being homosexual, a former drug addict, and an alcoholic. Finally, Vonnie testified that she heard her father was trying to contact her. In November 2001, Vonnie returned appellant's telephone call, where he stated that he was sorry "I made you suck my dick, I'm so sorry."

A.P. testified that she learned that appellant was not her biological father on the same day of the rape examination by Dr. McGee-Reed. The victim said that the sexual abuse started when she was about ten years old, and from ten to fourteen, the appellant would touch her chest and vaginal area with his hands, fingers, and mouth. When she was fourteen years old, appellant began having intercourse with her. A.P. testified that she remembered the incident, to which her mother has earlier testified, concerning the night the mother found appellant in her room naked. She said she was indeed awake, but pretended to be asleep. The victim testified

that she did not report the abuse because she was scared and was afraid that appellant would not love her anymore.

Pinder's counsel moved for a directed verdict at the close of the State's case, which the trial court denied. The defense put on three witnesses, all stating that they knew appellant to be a truthful man. Appellant testified on his on behalf, denying all the allegations. Pinder stated that his DNA was on the victim's mattress because he had slept there and masturbated in the bed. Pinder further stated that Vonnie had contacted him the previous year and blamed him for her problems. Appellant mentioned that A.P. was probably just mad at him for not letting her sleep over at Ashley's house, for his not letting her play basketball, and for his not letting her get her hair frosted. Appellant then moved for a directed verdict, and again at the close of all the evidence, which the trial court denied.

## Count 1

Appellant argues that there was insufficient evidence to find him guilty of Count 1, "On several occasions during the time period of the year 1998 to April 12, 2001, the defendant, Steven L. Pinder, committed the offense of Rape by engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion and who was less than fourteen (14) years of age against the peace and dignity of the State of Arkansas."

Appellant was charged with Rape, Ark. Code Ann. § 5-14-103 (Supp. 2001), which states in part:

> (a)(1) A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person:
>
> (A) By forcible compulsion; or
>
> (B) Who is incapable of consent because he or she is physically helpless, mentally defective, or mentally incapacitated; or
>
> (C)(I) Who is less than fourteen (14) years of age.

Here, there is substantial evidence that appellant committed rape. Ark. Code Ann. § 5-14-101(1), (9) (Repl. 1997) states:

> (1) "Deviate sexual activity" means any act of sexual gratification involving:

(A) The penetration, however slight, of the anus or mouth of one person by the penis of another person; or

(B) The penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person;

\* \* \* \*

(10) "Sexual intercourse" means penetration, however slight, of the labia majora by a penis.

■■ Pinder properly moved for a directed verdict at all necessary points during the trial. We have held that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Arnett v. State,* 353 Ark. 165, 114 S.W.3d 167 (2003); *Miles v. State,* 350 Ark. 243, 85 S.W.3d 907 (2002); *Britt v. State,* 344 Ark. 13, 38 S.W.3d 363 (2001). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Arnett, supra.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

■ According to the testimony at trial, appellant digitally penetrated A.P. numerous times before she was fourteen years old. A victim's uncorroborated testimony is sufficient to support a conviction if the statutory elements of the offense are satisfied. *Arnett,* 353 Ark. at 169. Even though appellant denied the allegations, the jury is not required to believe the self-serving testimony. *Sera v. State,* 241 Ark. 415, 17 S.W.3d 61 (2000). Although appellant contradicted her testimony, the jury was free to believe all or part of the victim's testimony and disbelieve his assertions. *Butler v. State,* 349 Ark. 252, 82 S.W.3d 152 (2002). Furthermore, when a rape victim is less than fourteen years of age, as the victim in this case, forcible compulsion is not an element of proof. *Caldwell v. State,* 319 Ark. 243, 891 S.W.2d 42 (1995). Therefore, the trial court is affirmed.

## Count 2

For his second point on appeal, appellant argues that there was insufficient evidence to support a guilty verdict of rape as alleged in Count 2, "On several occasions during the time period

of April 13, 2001 to November 2001 and specifically, on or about November 11, 2001, the defendant, Steven L. Pinder, committed the offense of Rape by engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion against the peace and dignity of the State of Arkansas."

■■ Appellant argues that the State was required to prove beyond a reasonable doubt that he engaged in sexual intercourse or deviate sexual activity with the victim by forcible compulsion. "Forcible compulsion" under the rape statute is defined as "physical force," which is further defined as "any bodily impact, restraint or confinement, or the threat thereof." Ark. Code Ann. 5-14-101(2) (1987); *Strawhacker v. State,* 304 Ark. 726, 804 S.W.2d 720 (1991). A victim's age and relationship to the assailant are key factors in weighing the sufficiency of the evidence in proving forcible compulsion, and age is an important factor in determining whether the victim consented to intercourse out of fear of harm. *Sublett v. State,* 337 Ark. 374, 989 S.W.2d 910 (1999).

■ Furthermore, when the assailant stands in *loco parentis* to a victim, the law regarding force is satisfied with less than a showing of the utmost physical resistance of which the victim is capable. *Caldwell,* 319 Ark. at 247, 891 S.W.2d at 45 (citing *Griswold v. State,* 290 Ark. 79, 716 S.W.2d 767 (1986)).

■ In this case, the victim testified that appellant had sexual intercourse with her a few days before November 16, 2001. Ashley Jackson and Investigator Emily Hampton testified that A.P. had told them that appellant had sexually abused her. Moreover, the DNA extracted from A.P.'s mattress, where the abuse occurred, tested positive for Pinder's DNA. Dr. McGee-Reed testified that the victim did not have a hymen, which indicates chronic or long-term sexual contact. The victim testified that she did not report the abuse because she was scared and was afraid that appellant would not love her anymore. Therefore, there was sufficient evidence to find appellant guilty of rape. Although a rape victim's testimony need not be corroborated to support a conviction, *Curtis v. State,* 301 Ark. 208, 783 S.W.2d 47 (1990), there is sufficient evidence that Pinder engaged in sexual intercourse with his fourteen-year-old stepdaughter. The trial court is affirmed.

## Rule 4-3 (h)

In accordance with Ark. Sup. Ct. R. 4-3(h) (2003), the record has been reviewed for adverse rulings objected to by the

appellant but not argued on appeal, and no reversible errors were found. We affirm appellant's judgment of conviction.

Affirmed.