Richard Leon STRONG *v.* STATE of Arkansas

CR 06-1346                                              277 S.W.3d 159

Supreme Court of Arkansas
Opinion delivered February 21, 2008

*Randel Keith Miller*, for appellant.

*Richard Leon Strong*, pro se.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Justice. ■ Appellant Richard Leon Strong was convicted by a Greene County jury of two counts of rape and was sentenced to serve two consecutive life sentences. His attorney has filed a motion to withdraw as counsel and a no-merit brief, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and Ark. Sup. Ct. R. 4-3(j)(1) (2007). Strong has submitted *pro se* points for reversal, pursuant to Ark. Sup. Ct. R. 4-3(j)(2), and the State has responded, pursuant to Ark. Sup. Ct. R. 4-3(j)(3). Our jurisdiction is in accordance with Ark. Sup. Ct. R. 1-2(a)(2) (2007), because Strong received sentences of life imprisonment. We find no error in the court's rulings below; therefore, we grant Strong's counsel's motion to withdraw and affirm the convictions.

K.M., the alleged victim, was fifteen years old at the time of the charged rapes. She grew up in the home of Strong and his wife, Thelma "Rose" Strong, after her biological mother left her in their care. K.M. lived with the Strong family from the time she was an infant, and, although she was never formally adopted, she considered the Strongs to be her parents. At the time of the charged rapes, Richard and Rose Strong had recently and temporarily separated; as a result, K.M. and Rose were staying in the apartment of Bertie Theodoropoulos, Richard's mother.

On January 16, 2006, K.M. went to the Paragould Police Department to report that she had been raped by Strong. She was

accompanied by the Strongs' three biological daughters, as well as Bertie. K.M. reported two recent incidents of abuse, which formed the basis of the charges, but testified at trial that the abuse was ongoing and began when she was approximately six or seven years old. The first of the recent incidents was alleged to have occurred on January 10, 2006, in a room at the Sunset Motel in Paragould. According to K.M.'s trial testimony, Strong telephoned Bertie's apartment that day to ask if he could take K.M. out to dinner and to a movie. K.M. agreed to eat with him, and, instead of seeing a movie, the two then shopped briefly at Wal-Mart. Strong then drove to the motel to pick up the key to the room, which he claimed to have rented in an effort to reunite with Rose. Strong urged K.M. to spend the night with him at the motel, but she refused. From the motel, Strong drove to a liquor store, where he purchased some alcohol and also bought a Dr. Pepper for K.M. The two then returned to the motel and entered the room he had rented. Each used the restroom separately. When K.M. exited the restroom, Strong had poured the soda into a glass for her and told her to drink it. K.M. noticed that the soda tasted odd and observed a white, chunky substance in the bottom of the glass. Strong then forced K.M. to have sexual intercourse with him. Afterward, he drove her back to Bertie's apartment.

Nic Khan, the owner and manager of the Sunset Motel, testified that Strong rented a room at approximately 10:00 or 11:00 on the night in question. A registration form showing the rental was admitted into evidence. Rose, who testified for the defense, stated that she left with Strong after he returned K.M. to Bertie's apartment that evening. She testified that they drove to McDonald's to buy a milkshake for K.M., took the milkshake to the apartment, went to a liquor store, and finally went to the same room at the Sunset Motel. Rose stated that the two of them stayed at the motel and talked until early the next morning about their marital problems, in an attempt to reconcile. According to Rose's testimony, she and Strong had sex in the motel room.

The second of the recent incidents was alleged to have occurred at Bertie's apartment on the night of January 13, 2006. By this date, Strong was also residing in Bertie's apartment with Rose and K.M. At approximately 7:00, Bertie and Rose, along with the Strongs' daughter Crystal and her boyfriend, left the apartment to spend the evening at a local bar. K.M. was left alone in the apartment with Strong and Crystal's infant daughter. Two of K.M.'s friends visited but only stayed at the apartment for approxi-

mately fifteen to twenty minutes. Sometime between 10:00 and 10:30, Crystal and her boyfriend arrived at the apartment to pick up the baby and then left. Shortly thereafter, Strong instructed K.M. to lock the front door and come into the bedroom. Strong forced K.M. to have sexual intercourse with him in Bertie's bed. He then cleaned himself and the area with a sock. According to Bertie's trial testimony, she and Rose returned to the apartment at approximately 10:30. At that time, K.M. and Strong were alone in the apartment.

K.M. gave the underwear that she wore on the evening of January 13 to the investigating officer, Detective Rhonda Thomas. In addition, Bertie gave Detective Thomas the unwashed fitted sheet from her bed and the sock that Strong had allegedly used to clean himself. Melissa Myhand, forensic DNA analyst at the Arkansas State Crime Laboratory, testified that, within all scientific certainty, the semen found on both the underwear and the sock originated from Strong. Epithelial cells found on the sock originated from K.M. Myhand testified that epithelial cells include skin cells, vaginal fluid, and cells obtained by oral swabs. No semen was found on the bedsheet.

K.M. was interviewed and examined on January 19, 2006, by Kathy Young, a nurse practitioner with considerable expertise in the area of sexual abuse of children. Young testified that her findings were consistent with K.M.'s allegations of sexual abuse. Specifically, Young noted a high level of estrogen effect, which suggests a long history of sexual abuse. She also observed an old injury to the hymen that was consistent with penetration at an early age.

Strong was formally charged in an information filed on February 23, 2006. An additional charge of incest was included but was dismissed before trial. Following the entry of judgment on August 17, 2006, Strong filed a timely pro se notice of appeal.

We first turn to the arguments made by Strong's counsel in the no-merit brief. Counsel points to six rulings below that were adverse to Strong and explains why none provide a meritorious ground for reversal of the convictions.

## I. Denial of Strong's Directed-Verdict Motions

Counsel asserts that Strong's directed-verdict motions were properly denied. This ruling is also discussed in Strong's *pro se*

points for reversal and in the State's response. Thus, we will consider those arguments at this time as well. Although this ruling was not the first addressed by counsel or by Strong, double jeopardy considerations require this court to review a directed-verdict argument before other points are addressed. *See Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001).

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

We conclude that substantial evidence supports Strong's convictions. He was charged with two counts of rape under Ark. Code Ann. § 5-14-103(a)(4)(A)(i) (Repl. 2006): A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than eighteen years of age and the actor is the victim's guardian. Thus, a conviction would require proof that K.M. was less than eighteen years of age, that Strong was her guardian, and that Strong engaged in sexual intercourse or deviate sexual activity with her.

We have held in rape cases that a victim's uncorroborated testimony is sufficient to support a conviction if the statutory elements of the offense are satisfied. *Pinder v. State*, 357 Ark. 275, 166 S.W.3d 49 (2004). Even when an appellant denies all of the allegations or contradicts the victim's testimony, the jury is free to disbelieve the appellant's self-serving testimony and believe the

victim's testimony instead. *Id.* K.M.'s testimony that she was fifteen years of age at the time of the two charged rapes, that she grew up in Strong's home and considered him her father, and that Strong engaged in sexual intercourse with her is sufficient to support the rape convictions.

Moreover, K.M.'s testimony was corroborated by other reliable evidence. The forensic DNA analyst's testimony that the semen found on the sock and the underwear matched the DNA sample provided by Strong, along with the nurse practitioner's testimony that K.M.'s injuries were consistent with sexual abuse, provide proof beyond K.M.'s testimony. Additionally, other witnesses, such as Bertie Theodoropoulos and Nic Khan, testified as to Strong's opportunities to engage in sexual intercourse with K.M. Clearly, the evidence supporting Strong's convictions is substantial.

■ The directed-verdict motions made at trial were premised on the argument that the State failed to prove forcible compulsion. However, proof of forcible compulsion is not required when the victim is less than eighteen years of age and the actor is the victim's guardian. Ark. Code Ann. § 5-14-103(a)(4)(A)(i). Therefore, that motion was properly denied. In his *pro se* points for reversal, Strong argues that the evidence was generally insufficient. He points out that he offered an explanation as to why his semen was found on the sock and the underwear.[1] However, as we have stated, the jury was free to disregard Strong's testimony. *Pinder v. State, supra.* Strong also notes that the State did not provide medical reports showing K.M.'s injuries, but it is clear that such proof was not required in this situation. K.M.'s uncorroborated testimony would have been sufficient, and the testimony of the nurse practitioner as to K.M.'s injuries further supports the jury's determination. *Id.* Thus, we conclude that the circuit court did not err in denying Strong's motions for a directed verdict. An appeal of these rulings would be wholly without merit.

---

[1] According to Strong, on the evening of January 13, K.M. entered Bertie's bedroom to find him masturbating. He testified that he quickly retrieved the sock from a nearby dirty-clothes basket to cover and clean himself. He also testified that he must have picked up the underwear as well, although, at the time, he was not necessarily aware of what articles of clothing he used.

## II. *Denial of Strong's Motion* in Limine *to Exclude Reference to Prior Conviction*

Strong filed a motion *in limine* to exclude any testimony regarding his criminal record. The circuit court denied this motion, noting that the only prior conviction at issue was a felony-theft conviction within the ten-year time limitation. The court ruled that, pursuant to Ark. R. Evid. 609 (2007), Strong's testifying would put his credibility at issue and would thus permit the introduction of such a conviction. In light of our abuse-of-discretion standard for review of evidentiary rulings, we conclude that the circuit court did not err.

Rule 609 provides, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one [1] year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or a witness, or (2) involved dishonesty or false statement, regardless of the punishment.

Ark. R. Evid. 609(a). The rule also states that evidence of a conviction is inadmissible if more than ten years have elapsed "since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." Ark. R. Evid. 609(b). We have upheld the use of this rule for purposes of impeachment of defendants who testify and have stated that a defendant who takes the witness stand in his or her own behalf places his or her credibility in issue. *Thomas v. State*, 315 Ark. 518, 868 S.W.2d 85 (1994).

The evidence admitted here was a judgment and commitment order, dated May 19, 1999, showing that Strong was convicted of one count of felony theft of property and sentenced to thirty-six months' imprisonment. It was obviously introduced to attack Strong's credibility as a witness, as it was introduced at a time when counsel for the State was questioning Strong about whether he had told the truth on direct examination. In addition, Strong's defense was a general denial, which made his credibility a central issue. The conviction clearly falls within the ten-year time limitation imposed by Ark. R. Evid. 609(b); while the date of

Strong's release from confinement for the conviction is unknown, it obviously would have been sometime between 1999 and 2006, the date of the jury trial in the case at bar.

■ Furthermore, felony theft of property was punishable by imprisonment in excess of one year under the law under which Strong was convicted. Finally, we conclude that the circuit court did not err in finding that the probative value of admitting this conviction outweighed any prejudicial effect. We have stated that the circuit court has considerable discretion in determining whether the probative value of a prior conviction outweighs its prejudicial effect, and that decision will not be reversed absent abuse. *Thomas v. State, supra.* We have also recognized that admissibility under Ark. R. Evid. 609 must be decided on a case-by-case basis. *Id.* Factors to be considered in the determination include: (1) the impeachment value of the prior crime; (2) the date of the conviction and the witness's subsequent history; (3) the similarity between the prior conviction and the crime charged; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *Id.* (citing *Sims v. State*, 27 Ark. App. 46, 766 S.W.2d 20 (1989)). Here, the prior conviction was relatively recent, the prior crime and the crime charged were dissimilar, and the issue of Strong's credibility was central, as previously noted. *See Sims v. State, supra.* Therefore, we conclude that the circuit court did not abuse its discretion in admitting this conviction for purposes of impeachment, and an appeal of this ruling would be meritless.

### III. Denial of Strong's Motion In Limine to Exclude Reference to Sexual Acts Perpetrated Against Others

Strong filed a motion *in limine* to exclude any testimony about sexual acts or statements done or made by him other than the incidents charged. Specifically, this included "statements by people, [other] than the alleged victim in this case, that Richard Strong has touched them in a sexual manner, attempted to do so, or made statements to them of a sexual nature." The circuit court granted the motion with respect to statements made by Strong but denied the motion with respect to acts perpetrated by Strong, pursuant to Ark. R. Evid. 404(b) (2007) and the "pedophile exception" articulated and recognized by this court. Shavonia Strong, one of Strong's biological daughters, testified that, on two occasions when she was approximately eight or nine years old, her

father attempted inappropriate sexual behavior with her. The admission or rejection of evidence under Ark. R. Evid. 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005).

According to Ark. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence is permissible for various other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b). This court has recognized a "pedophile exception" to this rule, whereby we have approved allowing evidence of similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Flanery v. State, supra.* The rationale for recognizing this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id.* For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006). We also require that there be an "intimate relationship" between the perpetrator and the victim of the prior act. *Id.*

Shavonia Strong's testimony falls squarely under the pedophile exception to Rule 404(b). The relationship between her and her father was clearly an intimate one. *See id.* The conduct about which she testified was sufficiently similar to the charged conduct to warrant application of the exception. Shavonia testified that her father tried to "rub against" her with his penis and that he did this while on top of her on a bed in his room. While this conduct is not identical to that alleged by K.M., we also note that both Shavonia and K.M. were under Strong's care at the time of the abuse. K.M. viewed Strong as her father. Furthermore, both girls were between the ages of six and nine at the time of the start of the abuse. In *Flanery v. State, supra*, we upheld the use of the pedophile exception despite the fact that the prior conduct was not identical to the charged conduct. We pointed out that the victim and the witness were similar in age when the abuse happened and that both were living in the appellant's home and viewed him as a father figure. *Id.*

In light of such precedent, we cannot say that the degree of similarity between the prior conduct and the charged conduct was insufficient.

Clearly, this evidence was helpful in showing a proclivity toward a specific act with a person or class of persons with whom Strong had an intimate relationship. *See id.* Shavonia's testimony helped to prove Strong's depraved sexual instinct. *See id.* Therefore, the circuit court did not abuse its discretion in denying Strong's motion and permitting this testimony, and an appeal of this ruling would be without merit. Likewise, Ark. R. Evid. 403 (2007) provides no ground for reversal. The circuit court did not abuse its discretion in concluding that the probative value of Shavonia's testimony outweighed the danger of unfair prejudice, because the evidence involved a similar crime against a child of an age similar to that of K.M., and both were in Strong's care at the time of the abuse. *See Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998).

*IV. Denial of Strong's Motion* in Limine *to Exclude Certain Testimony by Medical Personnel*

Strong moved to prohibit testimony by social workers, law enforcement officers, and medical personnel regarding acts that constitute sexual or child abuse and physical traits that indicate sexual or child abuse. The circuit court granted the motion with respect to social workers and law enforcement officers. However, the court permitted testimony from medical personnel (specifically, nurse practitioner Kathy Young) regarding injuries that are consistent with force or are otherwise consistent with sexual abuse and observations supporting the allegations of sexual abuse.

In *Jennings v. State*, 289 Ark. 39, 709 S.W.2d 69 (1986), the appellant, convicted of the rape of his stepdaughter, argued that the circuit court erred in permitting the testimony of the examining doctor. The doctor's testimony included observations of an old, well-healed scar around the hymen, distension of the vaginal opening, and a small amount of white discharge, all of which were consistent with penetration by an adult penis on more than one occasion. *Id.* We upheld the circuit court's ruling, noting that the doctor's opinion was not the ultimate issue to be decided, that being the appellant's guilt. *Id.* We also cited Ark. R. Evid. 704 (2007), which provides that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. *Id.*

■ The nurse practitioner's testimony in the instant case very nearly mirrors the medical testimony allowed in *Jennings*. Kathy Young testified that she observed an old injury to K.M.'s hymen, which would have been consistent with penetration at an early age. She also testified to the high level of estrogen effect, which was indicative of a long history of abuse. Pursuant to Rule 704, Young's testimony was not objectionable merely because it embraced the ultimate issue to be decided by the jury, that being Strong's guilt. Therefore, the circuit court did not abuse its discretion in permitting this testimony, and the ruling is not a meritorious ground for reversal.

### V. Denial of Strong's Objection to Certain Testimony by the Nurse Practitioner

During the nurse practitioner's testimony regarding her interview of K.M., she noted that K.M. had reported only the most recent occurrences of abuse. Nurse Young explained that child victims of sexual abuse often report only the most recent in a series of incidents, due to having blocked out the memories of earlier occurrences as a way of coping. Strong objected to this testimony on the basis that it was beyond Young's area of expertise, but the circuit court allowed the testimony to proceed.

■ Arkansas Rule of Evidence 702 (2007) provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Young was qualified as an expert by virtue of her extensive education, training, and practice as a nurse practitioner specializing in sexual abuse of children. She testified that she had earned bachelor's, master's, post-master's, and doctoral degrees in nursing, that she was a college professor in the field of nursing and also taught sexual-assault nurse-examiner courses, and that she had performed over two-thousand sexual-abuse examinations on children. Young testified that she had also received a considerable amount of training in the area of interviewing child victims of sexual abuse. The specialized knowledge on which Young based her opinion would have been of assistance to the jury in their understanding of her testimony. Considering Young's extensive education and training, we cannot say that this particular testimony was beyond her expertise. Therefore, the

circuit court did not abuse its discretion in overruling Strong's objection to Young's testimony about coping mechanisms exhibited by child victims of sexual abuse. This ruling does not provide a meritorious ground for reversal.

### VI. Denial of Strong's Objection to Admission of Evidence of Attempted Drug Overdoses

Strong's counsel objected on the basis of relevance when counsel for the State inquired as to how many times Strong had attempted to overdose on drugs since the time he was made aware of K.M.'s allegations against him. The circuit court allowed the questioning as tending to show knowledge of guilt. A ruling on the relevancy of evidence is discretionary and will not be reversed unless the trial court abused its discretion. *Clay v. State*, 318 Ark. 122, 883 S.W.2d 822 (1994).

It is well settled that the acts, conduct, and declarations of an accused before or after the crime may furnish necessary corroboration. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006). We have held that flight following the commission of an offense is a factor that may be considered with other evidence in determining probable guilt and may be considered as corroboration of evidence tending to establish guilt. *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001). We have also held that evidence of an accused's refusal to submit to a chemical test can be properly admitted as circumstantial evidence showing a knowledge or consciousness of guilt. *Medlock v. State*, 332 Ark. 106, 964 S.W.2d 196 (1998). Finally, we have held that an escape from incarceration is similarly admissible as circumstantial evidence of guilt. *Clay v. State, supra.*

This court, however, has never directly addressed the question of whether evidence of suicide attempts is admissible to show guilt or consciousness of guilt. In *MacKool v. State, supra*, the appellant argued that evidence that he had cut his wrists after giving a statement could not be considered as corroborative of his guilt, because there was another reasonable explanation as to why he cut his wrists. Yet, the appellant did not argue that the evidence was inadmissible. *Id.* This court held that, once it was admitted, the evidence and the significance to be attached to it were matters exclusively within the province of the jury. *Id.* We noted in the *MacKool* case that many jurisdictions have held that evidence of an accused's attempted suicide is admissible as probative of conscious-

ness of guilt. *Id.*Examples include California and Delaware, which both adhere to a broad rule allowing for the admissibility of evidence of any conduct of a defendant subsequent to the commission of the crime and tending to show consciousness of guilt. *People v. Butler*, 12 Cal. App. 3d 189, 90 Cal. Rptr. 497 (1970); *McKinney v. State*, 466 A.2d 356 (Del. 1983). In *People v. Butler, supra*, the California court noted that there is no requirement for the admissibility of evidence of a suicide attempt that consciousness of guilt be the only logical explanation. Florida courts have upheld jury instructions stating that a defendant's attempted suicide may be considered as an indication of a desire to evade prosecution and as an inference of guilt. *Walker v. State*, 483 So. 2d 791 (Fla. Dist. Ct. App. 1986); *see also Aldridge v. State*, 229 Ga. App. 544, 494 S.E.2d 368 (1997); *State v. Hargraves*, 62 Idaho 8, 107 P.2d 854 (1940); *People v. Campbell*, 126 Ill. App. 3d 1028, 467 N.E.2d 1112 (1984); *State v. Mitchell*, 450 N.W.2d 828 (Iowa 1990); *Commonwealth v. Sheriff*, 425 Mass. 186, 680 N.E.2d 75 (1997); *State v. Painter*, 329 Mo. 314, 44 S.W.2d 79 (1931); *State v. Campbell*, 146 Mont. 251, 405 P.2d 978 (1965); *State v. Plunkett*, 62 Nev. 258, 149 P.2d 101 (1944); *State v. Brown*, 128 N.H. 606, 517 A.2d 831 (1986); *State v. Mann*, 132 N.J. 410, 625 A.2d 1102 (1993); *State v. Blancett*, 24 N.M. 433, 174 P. 207 (1918); *State v. Hunt*, 305 N.C. 238, 287 S.E.2d 818 (1982); *Commonwealth v. Giacobbe*, 341 Pa. 187, 19 A.2d 71 (1941); *State v. White*, 649 S.W.2d 598 (Tenn. Crim. App. 1982); *State v. Onorato*, 171 Vt. 577, 762 A.2d 858 (2000).

Although we have not yet adopted a similar rule, we cannot say that the circuit court erred in permitting testimony regarding Strong's overdose attempts. In light of the case law from other jurisdictions, as well as our holdings regarding flight, refusal to submit to testing, and escape from incarceration, we cannot say that the circuit court abused its discretion.

We now turn to the seventeen *pro se* points for reversal articulated by Strong. They are as follows:

1. The circuit court erred in allowing counsel for the State, during closing arguments of the sentencing phase, to discuss the low cure rates of sex offenders.

2. Life sentences may not be ordered to run consecutively.

3. The "Arkansas child hearsay exception regarding sexual offenses, abuse, or incest" is unconstitutional.

4. The circuit court erred in prohibiting certain evidence pursuant to the rape-shield statute.

5. Strong's attorney failed to give prior notice of defense witnesses.

6. The circuit court should have suppressed Strong's statement made to police.

7. "Evidentiary questions" (a list of case citations only).

8. The representation provided to Strong by his attorney was ineffective.

9. Strong was denied his constitutional right to counsel because the jury was not instructed that he could not be found guilty unless all elements of the charged offense were proven beyond a reasonable doubt.

10. The circuit court should have taken judicial notice of the textbooks authored by Kathy Young.

11. Luminol testing should have been performed to prove that the blood found on the bedsheet originated from one of Bertie's pets.

12. Strong's attorney failed to preserve issues for appeal.

13. "Impeachment of witnesses" (citation only).

14. The circuit court erred in allowing counsel for the State, during closing arguments of the sentencing phase, to discuss consecutive sentences.

15. Strong's statement should have been suppressed because he was medicated at the time it was given.

16. The fact that Rose Strong was contradicted by other evidence did not constitute an attack upon her character for truthfulness.

17. "Orders of prior commitments" (citations only).

It is well settled that an appellant must raise and make an argument at trial in order to preserve it for appeal. *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003). This is true even when the

issue raised is constitutional in nature. *Id*. If a particular theory was not presented at trial, the theory will not be reached on appeal. *Id*. Moreover, an appellant must obtain a ruling on his or her argument to preserve the matter for this court's review. *Id*. The burden of providing a record sufficient to demonstrate error is upon the appellant. *Id*.

None of Strong's seventeen points is properly preserved for our review. His counsel objected to the State's playing the tape of his statement, but that objection was on the basis of improper procedure, as the State had not attempted to introduce the statement during its case in chief and instead sought to introduce it through a rebuttal witness. Also, after the State played the tape for impeachment purposes, Strong's counsel moved that it be admitted into evidence. Therefore, Strong's arguments on this point, as well as all other arguments, are not preserved. Furthermore, most of Strong's arguments are unsupported by explanation and citation to authority. We will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support and it is not apparent without further research that the argument is well taken. *Weatherford v. State*, 352 Ark. 324, 101 S.W.3d 227 (2003). For these reasons, we must decline to address Strong's *pro se* arguments in support of the reversal of his convictions.

### Rule 4-3(h) Review

Finally, in compliance with Ark. Sup. Ct. R. 4-3(h) (2007), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Strong, and no prejudicial error has been found. *See Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003). We note that several rulings adverse to Strong were not addressed by Strong's counsel in his no-merit brief: the grant of the State's motion to permit the taking of hair and buccal swab samples, the grant of the State's motion *in limine* to exclude portions of Rose's testimony, the sustaining of the State's several objections on the grounds of hearsay, relevance, and speculation, and the overruling of Strong's objection to the State's use of his taped statement to impeach his testimony. Nonetheless, these rulings do not provide a meritorious ground for reversal.

Affirmed; motion to withdraw granted.