2009 Ark. App. 262

**Jonathan GOODMAN, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–967.**

Court of Appeals of Arkansas.

April 8, 2009.

---

William R. Simpson, Jr., Public Defender, Brandy Turner, Deputy Public Defender, by: Clint Miller, Deputy Public Defender, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., Little Rock, for appellee.

KAREN R. BAKER, Judge.

A jury in Pulaski County Circuit Court convicted appellant Jonathan Goodman of rape in violation of Ark.Code Ann. § 5–14–103(a)(1) (Supp. 2007) and sentenced him to fifteen years' imprisonment in the Arkansas Department of Correction. He presents one argument on appeal: that the trial court erred in denying his motion for a directed verdict because the State failed to introduce substantial evidence that he engaged in sexual intercourse with the victim by forcible compulsion. Finding no error, we affirm.

LaToya Franklin, the victim, was twenty-two years of age. She and appellant were both employed at the *Arkansas Democrat-Gazette*. She testified that they had known each other briefly and had spoken on the telephone once or twice. During one of their telephone conversations, appellant offered to give LaToya a ride home from work. She testified that on December 31, 2006, at 4:30 a.m., she agreed to let appellant give her a ride home. She explained that appellant did not drive her directly to her home in North Little Rock. Instead, appellant "made an excuse to kind of go to Little Rock." He told LaToya that he had to "drop some papers off at someone's house." LaToya testified that initially she "was okay with [appellant's detour]." She explained, however, that appellant pulled the vehicle into a gated area in an unfamiliar area of Little Rock and exited the vehicle. He went to the back of his vehicle and returned with a bottle of liquor.

She was unable to testify as to the location because she was unfamiliar with certain areas of Little Rock. Appellant did not deliver the papers. Instead, he drove LaToya to a second location where they had a river view and parked the vehicle. At this point, appellant poured each of them a shot glass of liquor, which they drank.

LaToya testified that up until this point, she was not alarmed. However, after she finished a second shot glass of the liquor, while she and appellant were talking, she began to have a strange feeling. She stated that she thought, "this is not feeling right for me," and though she did not see a weapon, she was "scared of what [appellant] would do."

During their conversation, appellant revealed to LaToya that he "liked her." She then told appellant that she "wasn't into him like that." Appellant began "rubbing on her leg" and began "making his way over there as far as kissing on [her]." LaToya told appellant that she "didn't want to do it." She also "pushed him off [her] saying no." Despite her protests, appellant proceeded to pull her clothes off; LaToya fought him as he removed her clothes, but appellant's strength was such that she was unable to keep him from removing her clothes. She, again, told him to stop and repeated to him that she "didn't want to do it." LaToya testified that she was "scared" and that she became more afraid when appellant asked her, "What'd you gonna do? Are you going to go to the police?" Appellant then pulled down his pants, put on a condom, and engaged in sexual intercourse with LaToya by force. LaToya testified that the condom had broken during intercourse, and appellant then removed the condom and put it back inside of her saying, that if she was pregnant, the substance on the

condom would "kill the baby." LaToya testified that appellant then climbed back into the driver's seat of the vehicle, and she put her clothes back on. She described appellant as acting like "that [was] all he wanted." Appellant then drove La-Toya home.

During the ride home, LaToya testified that she used her cellular phone to record the conversation between her and appellant. Relevant portions of the conversation were as follows:

> FRANKLIN: I was saying no from the beginning. That should have been enough.
>
> GOODMAN: What'd you think? Sh*t, at (inaudible) the sh*t escalated. Put it in retrospect, I was prepared. I had a condom.
>
> FRANKLIN: So you were expecting to have sex with me?
>
> GOODMAN: No I was not . . . I just wanted to see how far it was that I could push everything. (Inaudible) . . . I wanted to know if you're the type of female that bite, kick and scratch . . . I just wanted to know what kind of female you were . . .
>
>    . . . .
>
> FRANKLIN: When I said no, you should have stopped then.
>
> GOODMAN: That already happened. That already happened. Sh*t. I can't take that back. Yeah, I should have stopped. You know what I'm saying? But for real, you gonna help me out or something (inaudible) like that?
>
>    . . . .
>
> FRANKLIN: I told you no, and you kept going.
>
>    . . . .
>
> FRANKLIN: No means no, right?
>
> GOODMAN: Yeah, it do.
>
>    . . . .

> GOODMAN: You shocked you had a one night stand?
>
> FRANKLIN: Against my will, yes.
>
> GOODMAN: (Inaudible), was it good though?

LaToya testified appellant left her at her home. Approximately two hours later, La-Toya called a friend and went to the hospital.

At the conclusion of LaToya's testimony, the State rested. Appellant's counsel made a motion for a directed verdict stating that the State had failed to make a prima facie case that appellant forcibly had sexual intercourse with the victim. The trial court denied appellant's motion.

Appellant then testified that he and La-Toya were in the process of getting to know each other. In their conversations, they had discussed things such as whether or not LaToya drank alcohol and that appellant's favorite drink was Opportunity State Jamaican Rum. Appellant also testified that he specifically asked LaToya "if [he] could have sex with her," and that she responded, "Yeah, sure, it could happen."

Appellant testified that on December 31, 2006, he and LaToya left work together and that she was aware that he had liquor in the trunk. He said that he made one stop to drop off some papers and then stopped to get a "liquor cutter." He then drove LaToya to "skateboard park." He parked the car, locked the doors, and poured two shots of liquor, which they drank. They talked for approximately fifteen minutes when things became physical, and the two had sexual intercourse. He testified that LaToya did not ask him to stop or say "no." She did not "try to bite [him], hit at [him]," scream, or do anything to make him think she did not want to have sex with him. Appellant stated that it was not until intercourse was over that LaToya told him to "leave her alone." Ap-

pellant denied that the recorded conversation ever took place.

At the conclusion of the evidence, appellant's counsel renewed the motion for a directed verdict. The motion was denied. Appellant was found guilty of rape and sentenced accordingly. This appeal followed.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Pinder v. State*, 357 Ark. 275, 166 S.W.3d 49 (2004). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* A rape victim's testimony need not be corroborated to support a conviction. *Id.*

Appellant argues that the State presented insufficient evidence of rape. While he concedes that he had sexual intercourse with the victim, he alleges that the State failed to prove that he had sexual intercourse with the victim by means of forcible compulsion. Arkansas Code Annotated section 5–14–103(a)(1) states: "A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person: ... By forcible compulsion." "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark.Code Ann. § 5–14–101(2) (Repl. 2006). Our supreme court has defined "physical force" as any bodily impact, restraint or confinement, or the threat thereof. *Freeman v. State*, 331 Ark. 130, 132, 959 S.W.2d 400, 401 (1998). The test to determine if there was physical force is

whether the act was against the will of the party upon whom the act was committed. *Freeman*, 331 Ark. at 133, 959 S.W.2d at 401. Furthermore, our courts have continually held that a rape victim's testimony alone is sufficient and is substantial evidence to support a rape conviction. *Ellis v. State*, 364 Ark. 538, 222 S.W.3d 192 (2006).

In this case, LaToya testified that appellant forced her to have sexual intercourse with him against her will. A rape victim's testimony satisfies the requirement that there be substantial evidence that the defendant committed the crime. *West v. State*, 27 Ark.App. 49, 766 S.W.2d 22 (1989) (citing *Houston v. State*, 293 Ark. 492, 739 S.W.2d 154 (1987)). A victim's testimony that she was forcibly compelled to submit to the rapist constitutes substantial evidence on which to base a conviction. *Id.* (citing *Taylor v. State*, 296 Ark. 89, 752 S.W.2d 2 (1988); *Lewis v. State*, 295 Ark. 499, 749 S.W.2d 672 (1988)). The quantum of force need not be considered as long as the act is committed against the will of the victim. *Spencer v. State*, 255 Ark. 258, 499 S.W.2d 856 (1973). Although appellant's testimony contradicted LaToya's account of what happened, the jury was not required to believe him. *See Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008) (stating that even when an appellant denies all of the allegations or contradicts the victim's testimony, the jury is free to disbelieve the appellant's self-serving testimony and believe the victim's testimony instead). We hold that the evidence viewed in the light most favorable to the State supports the jury's verdict.

Affirmed.

KINARD, J., agrees.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring.

I agree with the majority opinion to affirm this rape conviction. I write separately only to point out that appellant's counsel has grossly over-abstracted the record on appeal.

Arkansas Rule of Supreme Court 4–2(a)(5) provides, in pertinent part:

> The appellant's abstract or abridgment of the transcript should consist of an impartial condensation, without comment or emphasis, of only such material parts of the testimony of the witnesses and colloquies between the court and counsel and other parties as are necessary to an understanding of all questions presented to the Court for decision.

"[E]xcessive abstracting is as violative of our rules as omissions of material pleadings, exhibits, and testimony." *Forrest City Machine Works, Inc. v. Mosbacher*, 312 Ark. 578, 587, 851 S.W.2d 443, 448 (1993); *see also Rose City Property Owners' Ass'n v. Thorne*, 299 Ark. 29, 770 S.W.2d 655 (1989); *Coffelt v. Arkansas State Hwy. Comm'n*, 289 Ark. 348, 712 S.W.2d 283 (1986); *Oaklawn Jockey Club, Inc. v. Jameson*, 280 Ark. 150, 655 S.W.2d 417 (1983); *Harris v. Arkansas Real Estate Comm'n*, 274 Ark. 537, 627 S.W.2d 1 (1982).

In this rape trial, the testimony relevant to "forcible compulsion" was relevant to appeal. However, appellant's abstract includes pre-trial motions, opening statements, testimony concerning the process of the medical rape-kit collection and crime laboratory chain of custody and DNA test results (which are not relevant where everyone agrees the victim and appellant had intercourse), all jury instructions, closing arguments, the reading of the verdict, sentencing instructions, sentencing testimony, sentencing closing arguments, the removal of appellant from the courtroom, the rendition of sentence, and appellate instructions. This constitutes gross over-abstracting, well beyond what was necessary to the sole issue on appeal.

Our waste of time in wading through this unnecessary material and the needless expense borne by the State in photocopying this material in multiple sets of briefs are not acceptable. In the future, I will urge our court to remand appeals for re-briefing where over-abstracting is apparent.