KENNETH S. HIXSON, Judge
Appellant Brandon Wallace was charged with rape and second-degree sexual assault allegedly committed against A.M. when she was thirteen years old. After a jury trial, Mr. Wallace was acquitted of rape but convicted of second-degree sexual assault. For this conviction Mr. Wallace was sentenced to fifteen years in prison, and he now appeals.
On appeal, Mr. Wallace raises one argument. He argues that the trial court erred in failing to give the complete version of his proposed jury instruction pertaining to consciousness of guilt. We affirm.
In 2014, Mr. Wallace lived with his then girlfriend of five years, Becky. Becky is A.M.'s mother. Also residing in the house were A.M. and her three younger siblings. Mr. Wallace is not the father of either A.M. or the second oldest child, but he is the father of the two youngest children.
*908 The State alleged that Mr. Wallace had sexually assaulted A.M. between September and November 2014. These incidents allegedly occurred when Becky, a night-shift ER nurse, was at work while Mr. Wallace was at home watching the children.
Prior to trial, the State filed a motion of its intent to introduce testimony that after the allegations against him surfaced, Mr. Wallace purchased a gun and told one of the State's witnesses (Becky) that he was going to kill himself. The State also sought to introduce testimony that when Mr. Wallace was arrested, he asked the police to shoot him. Mr. Wallace filed a response to the State's motion, seeking to exclude this testimony on the grounds that this proposed evidence of his consciousness of guilt violated Arkansas Rules of Evidence 403 and 404(b). Mr. Wallace argued, among other things, that any probative value of the proposed testimony was outweighed by its unfair prejudice. After a pretrial hearing on the State's motion, the trial court denied Mr. Wallace's objection to the testimony and ruled it admissible.[1]
A.M. testified at trial that she was born on December 28, 2000. A.M. stated that Mr. Wallace touched her inappropriately on multiple occasions beginning in September 2014. A.M. testified that the first time this happened Mr. Wallace came into her bedroom, and while she was lying down, he felt her breast, buttocks, and inner thigh through her clothing. A.M. stated that this happened while her mother was at work. According to A.M., on the following day Mr. Wallace warned her that if she told anyone what had happened he would kill her and her family. A.M. testified that over the next couple of months Mr. Wallace touched her in this manner about four more times over her clothing and touched her twice underneath her clothing.
The last such occurrence happened on the night of November 6, 2014. A.M. stated that while her mother was at work, Mr. Wallace came into her bedroom and was touching her mainly on her inner thigh. A.M. told him to stop and then got angry and left the house. While A.M. was walking away from their house, Mr. Wallace followed her in his truck and was trying to get her to get into the truck to take her back home. The police arrived as A.M. and Mr. Wallace were arguing, and A.M. told the police that she did not want to go back to the house because Mr. Wallace rapes her there.
Officer Keith Wilson testified that he arrested Mr. Wallace on the night of November 11, 2014. Officer Wilson testified that he approached Mr. Wallace's truck and that Mr. Wallace pulled out a cell phone, pointed it at the officers, and said "shoot me." Officer Wilson could tell it was a cell phone from the light of the cell phone, and he told the other officers not to shoot. Mr. Wallace was then taken into custody.
A.M.'s mother, Becky, testified that she first became aware of the allegations against Mr. Wallace on the night of November 6, 2014, when she was contacted by the police. Becky stated that Mr. Wallace has not lived in their house since that time. Becky testified that a few days after these allegations surfaced but before Mr. Wallace was arrested, he approached her in her garage; he had a gun in his hand and was making statements about killing himself with the gun.
After the State rested, Mr. Wallace made arguments to the trial court regarding *909 his proposed jury instruction on consciousness of guilt. Mr. Wallace proffered the following instruction:
Members of the jury, you are instructed that evidence of other alleged crimes, wrongs or acts of Brandon Wallace may not be considered by you to prove the character of Brandon Wallace in order to show that he acted in conformity therewith.
This evidence is not to be considered to establish a particular trait of character that he may have, nor is it to be considered to show that he acted similarly or accordingly on the day of the incident.
This evidence is merely offered as evidence of consciousness of guilt. Whether any other alleged crimes, wrongs, or acts have been committed is for you to determine.
You are specifically cautioned that evidence of consciousness of guilt of a defendant may not be used as a substitute for proof of guilt. Contemplation of suicide does not create a presumption of guilt.
Contemplation of suicide under these circumstances may be motivated by a variety of factors, some of which could be called consciousness of innocence. Innocent people may feel depressed and suicidal following an accusation of sexual misconduct, especially against a minor, and especially against a minor household member. They may also contemplate suicide because they are overwhelmed, or unable to confront a situation, or for any number of understandable reasons under these circumstances.
You should consider such evidence of contemplation of suicide alongside other presented evidence and give it the weight you believe it deserves, if any. You alone, the jury, may designate a weight to this evidence and it is your duty to do so, in conjunction with the rest of the evidence presented to you during this trial.
You are free to ignore any such evidence if you decide that such conduct was innocent in nature or was not reflective of a consciousness of guilt of the crime charged. You may also ignore this evidence if you cannot decide upon the defendant's motivation for the contemplation of suicide.
You are reminded that you may not find the defendant guilty purely on the basis of this evidence but it may be used by you in conjunction with other evidence to determine guilt or innocence.
The State objected to giving the entirety of the above instruction, and instead proposed that only the first three paragraphs be given to the jury. The first three paragraphs are a verbatim reproduction of AMI Crim. 2d 203-A, which pertains to an evidentiary instruction given pursuant to Ark. R. Evid. 404(b).
The trial court refused to give the entire eight-paragraph instruction proffered by Mr. Wallace. However, the trial court did give the first four paragraphs of Mr. Wallace's proposed instruction, thus instructing the jury as follows:
Members of the jury, you are instructed that evidence of other alleged crimes, wrongs or acts of Brandon Wallace may not be considered by you to prove the character of Brandon Wallace in order to show that he acted in conformity therewith.
This evidence is not to be considered to establish a particular trait of character that he may have, nor is it to be considered to show that he acted similarly or accordingly on the day of the incident.
This evidence is merely offered as evidence of consciousness of guilt. Whether any other alleged crimes, wrongs, or *910 acts have been committed is for you to determine.
You are specifically cautioned that evidence of consciousness of guilt of a defendant may not be used as a substitute for proof of guilt. Contemplation of suicide does not create a presumption of guilt.
At the close of the case, the trial court gave additional jury instruction, and the jury heard closing arguments. The jury returned a guilty verdict against Mr. Wallace for committing second-degree sexual assault.
The sole argument raised by Mr. Wallace in this appeal is that the trial court abused its discretion in failing to give the full eight-paragraph version of his proposed jury instruction pertaining to consciousness of guilt. Mr. Wallace contends that by omitting the final four paragraphs of his proposed instruction, the jury was not informed that his threat to commit suicide and his effort to provoke the police into shooting him were not necessarily proof of Mr. Wallace's consciousness of guilt. Mr. Wallace complains that the instruction given by the trial court did not cover the possibilities of inferences other than Mr. Wallace's consciousness of guilt, which were set forth in his proffered instruction. Because inferences other than Mr. Wallace's guilt of second-degree sexual assault could reasonably be drawn from his suicidal conduct, Mr. Wallace argues that it was reversible error to refuse his proffered instruction.
As an initial matter, our supreme court has held that when evidence of another crime or wrong reflects consciousness of guilt of the commission of the crime charged, it is independently relevant and admissible under Ark. R. Evid. 404(b). Dimas-Martinez v. State , 2011 Ark. 515, 385 S.W.3d 238. More specifically, our supreme court has held that a defendant's attempt to commit suicide can be offered by the State at trial to prove the defendant's consciousness of guilt of the charged offense. Strong v. State , 372 Ark. 404, 277 S.W.3d 159 (2008).
Inclusion or exclusion of a jury instruction is a matter of discretion for the trial court, whose ruling will not be reversed in the absence of an abuse of discretion. Taylor v. State , 2013 Ark. App. 146, 2013 WL 765229. A party is entitled to a jury instruction if it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. Id. Nonmodel instructions are to be given only when the trial court finds that an AMCI instruction does not accurately state the law or AMCI does not contain an instruction on the needed subject. Blaney v. State , 280 Ark. 253, 657 S.W.2d 531 (1983). Finally, our supreme court has stated that in determining whether the trial court erred in refusing a jury instruction in a criminal trial, the test is whether the omission infects the entire trial such that the resulting conviction violates due process. Branstetter v. State , 346 Ark. 62, 57 S.W.3d 105 (2001).
We conclude that the trial court did not abuse its discretion in refusing to give the entire jury instruction proffered by Mr. Wallace and instead giving the abbreviated version that it gave. The first three paragraphs of the jury instruction given by the trial court were taken directly from a model instruction, AMI Crim. 2d 203-A, and was a correct statement of the law concerning a defendant's consciousness of guilt under Ark. R. Evid. 404(b). In addition to the model instruction, at Mr. Wallace's request, the trial court permitted an additional paragraph, giving the jury the following cautionary instruction:
You are specifically cautioned that evidence of consciousness of guilt of a defendant may not be used as a substitute for proof of guilt. Contemplation of suicide *911 does not create a presumption of guilt.
The instruction as given was a correct statement of the law and was proper.
Although a defendant's attempt to commit suicide can be offered to prove a defendant's consciousness of guilt, see Strong , supra , appellant has cited no Arkansas case, and we know of none, that stands for the proposition that the jury should be instructed that evidence of a defendant's suicide attempts might be proof of his innocence. Nor is there any such model jury instruction. The instruction as given cautioned the jury that although the evidence was offered as consciousness of guilt, such evidence may not be used as a substitute for proof of guilt and that contemplation of suicide creates no presumption of guilt. As acknowledged by the State in its closing argument to the jury, there are "absolutely reasons" other than guilt that people contemplate suicide. While the myriad of other possibilities for contemplating suicide might be appropriate for the defense to argue in closing argument, we conclude that there was no abuse of discretion by the trial court in limiting the consciousness-of-guilt jury instruction as it did in this case.
Affirmed.
Glover and Vaught, JJ., agree.

Mr. Wallace does not challenge on appeal the trial court's ruling that this testimony was admissible.