William Andrew ARNETT *v.* STATE of Arkansas

CR 02-767                                                      122 S.W.3d 484

Supreme Court of Arkansas
Opinion delivered May 15, 2003

*Bruce J. Bennett,* for appellant.

*Mike Beebe*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. Appellant, William Andrew Arnett, was convicted in the Benton County Circuit Court of the offense of incest, a Class A felony, in that the victim was appellant's stepdaughter, and she was under the age of sixteen at the time the events occurred. Following a jury trial, appellant was sentenced to thirty years' imprisonment in the Arkansas Department of Correction and fined $7,500.00. We affirm his conviction and sentence.

Appellant was initially arrested on January 31, 2001, and charged with first-degree sexual abuse, after his stepdaughter, C.Y., had reported to the Benton County Sheriff's Office on January 10, 2001, that she had been sexually assaulted by appellant over a number of years and after the sheriff's office had been called to a disturbance at appellant's home on January 16, 2001. When the sheriff's deputy, Lee Christman, who is now an investigator with the sheriff's office, arrived at appellant's home on January 16th, he temporarily placed appellant in handcuffs as a safety precaution for both himself and appellant and then asked appellant what was up. Appellant gave a statement suggesting a confession, and then, after being read his rights, gave another statement that was different from the previous one. He was later arrested on January 31, 2001.

Several months later, in August of 2001, the criminal information charging appellant was amended to reflect the charge of incest, rather than sexual abuse in the first degree. In November of 2001, a suppression hearing was held regarding the admissibility of the statements appellant made to Investigator Christman on January 16, 2001, when he had been called to the scene of appellant's home. The trial court denied appellant's motion to suppress those statements.

The case then went to trial, during which appellant moved to be permitted to procure testimony from the victim regarding allegations that she had purportedly made against her natural father. Following a brief hearing, the appellant's motion was denied. Appellant was convicted and, as previously stated, was sentenced

to thirty years' imprisonment and was fined $7,500.00. Appellant now appeals his conviction, asserting three arguments:

1) The evidence was insufficient to sustain a conviction;

2) The trial court erred in denying appellant's motion to suppress; and

3) The trial court erred in denying appellant's motion to allow appellant to question the alleged victim regarding statements made concerning sexual abuse allegations against another person (*i.e.*, her natural father).

## I. Sufficiency of Evidence

■ ■ Appellant first asserts that the evidence presented at trial was insufficient to sustain a conviction. Appellant properly moved for a directed verdict at all necessary points during the trial. We have held that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Miles v. State*, 350 Ark. 243, 85 S.W.3d 907 (2002); *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Miles, supra*. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

■ Appellant asserts that the evidence was insufficient because the State's entire case rested upon the victim's testimony and the testimony of the sheriff's deputy regarding the statements made to him on January 16, 2001, at appellant's home, which appellant considers to be equivocal, and that no physical evidence was presented. This is true; however, appellant acknowledges that we have held a victim's uncorroborated testimony to be sufficient to support a conviction if the statutory elements of the offense are satisfied. *Laughlin v. State*, 316 Ark. 489, 872 S.W.2d 848 (1994). Appellant simply asserts that, although it is the law that a victim's testimony alone is sufficient to support a conviction, there are simply too many inconsistencies in this trial record. We disagree.

█  Arkansas Code Annotated § 5-26-202(a)(2) (Repl. 1997) states that a person commits incest if, being sixteen years of age or older, he or she purports to marry, has sexual intercourse with, or engages in deviate sexual activity with a person he knows to be a stepchild. Incest is a Class A felony if the victim is under sixteen, and the perpetrator is over twenty-one, at the time of the offense. Ark. Code Ann. § 5-26-202(c). In this case, the victim is the stepdaughter of appellant. She testified that appellant began forcing her to have sexual intercourse with him, sometimes up to five times per day, when she was thirteen or fourteen years old. She testified that she was scared and did not know what to do and that he had threatened to punish her severely, to kill himself, or to retaliate against her. She eventually told her boyfriend about the alleged abuse, and he told his parents. They contacted authorities.

When Benton County Sheriff's Office Investigator Lee Christman responded to a disturbance call at appellant's home on January 16, 2001, he (then-Deputy Christman) did not know anything about a possible incest investigation involving appellant. Appellant's wife informed Investigator Christman that appellant may have a weapon and that she feared he might harm himself. As Investigator Christman neared appellant's home, appellant came out of the woods with his hands up. Christman testified that he then temporarily placed the appellant in handcuffs for both of their safety and asked appellant, "What's up?" Christman testified that appellant responded, "I have sexually abused my daughter. I need help." After appellant was given his *Miranda* rights, appellant claims that he stated that he had been *accused* of sexually abusing his daughter and that this is what he meant when he made his first, initial statement to Investigator Christman. Appellant did tell Investigator Christman that he had gone into the woods to kill himself. A shotgun was, in fact, recovered from the woods.

█  Appellant points out that the victim's mother, as well as her brothers, each testified that they never saw or had any indication of any sexual abuse between appellant and the victim. This fact, however, is unconvincing, as it is the jury's place to judge the credibility of the witnesses, *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998), and the victim's testimony that appellant repeatedly engaged in sexual intercourse over a long period of

time is, in and of itself, substantial evidence to support the conviction. In addition, the jury could have viewed appellant's initial statement to Investigator Christman as an admission of guilt.

In short, given the fact that appellant concedes that it is the law that a victim's uncorroborated testimony is sufficient to support a conviction, his assertion that the evidence in this case was insufficient is without merit.

## II. Suppression of Statements

On appeal, this Court makes an independent determination of the voluntariness of a confession, but in doing so, we review the totality of the circumstances and will reverse only when the trial court's finding of voluntariness is clearly against the preponderance of the evidence. See *Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999); *Jones v. State*, 323 Ark. 655, 916 S.W.2d 736 (1996); *Trull v. State*, 322 Ark. 157, 908 S.W.2d 83 (1995).

On January 16, 2001, when then–Deputy Christman responded to a disturbance call at the appellant's home, reports had already been made regarding allegations of incest against appellant; however, Christman was not aware of those reports. As recited above, upon his arrival at the scene, Christman first met with appellant's wife, who told Christman that appellant was at the residence but that she believed he was going to harm himself. As Christman approached the house, he called out for appellant. He initially received no response; but, as he was about to enter the house, he heard appellant yell from the edge of a wooded area approximately 100 yards away. Although appellant was not instructed to do so, he came toward Christman with his hands up.

As appellant neared Christman, Christman told him that he was going to temporarily place handcuffs on appellant for both of their safety and then asked appellant, "What's up?" Christman testified that appellant responded that he had sexually abused his daughter and that he needed help. Christman then gave *Miranda* warnings to appellant, and appellant then stated that he had been accused of sexually abusing his daughter. He repeated several times that he needed help. Appellant moved in the trial court to suppress these statements, arguing that because they were given

after he was "in custody" (*i.e.*, handcuffed) but before he was Mirandized, then they were involuntary and should be suppressed, as they were tantamount to a confession.

We have held that a statement made while an accused is in custody is presumptively involuntary; the burden is on the State to prove, by a preponderance of the evidence, that a custodial statement was given voluntarily and was knowingly and intelligently made. *Whitaker v. State*, 348 Ark. 90, 71 S.W.3d 567 (2002); *Lacy v. State*, 345 Ark. 63, 44 S.W.3d 296 (2001); *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998). Appellant concedes that Investigator Christman made no threats or offerings of coercion in order to obtain the statement. Still, appellant maintains that by putting handcuffs on appellant and asking him a question, although general in nature, investigator Christman's question, "What's up?" amounted to "interrogation." The State contends that the statement was spontaneous and is, therefore, admissible. We agree with the State.

It is well settled that a suspect's spontaneous statement, although made in police custody, is admissible against him or her. *See Fairchild v. State*, 349 Ark. 147, 76 S.W.3d 884 (2002). It is irrelevant whether the statement, if in fact spontaneous, was made before or after *Miranda* warnings had been issued, or whether appellant was in custody. *Id.* We have held that a spontaneous statement is admissible because it is not compelled or the result of coercion under the Fifth Amendment's privilege against self-incrimination. *Id.* On review, we focus on whether the statement was made in the context of a police interrogation, meaning direct or indirect questioning put to appellant by the police with the purpose of eliciting a statement from him or her. *See Rhode Island v. Innis*, 446 U.S. 291 (1980).

We hold that Investigator Christman's general question in this case of "What's up?" is a general term of salutation much like the officer's salutation in *Weber v. State*, 326 Ark. 564, 933 S.W.2d 370 (1996), wherein we held that the trial court was correct in admitting a defendant's incriminating statement made in reply to the responding officer's salutation. It is not reasonable to view Christman's general "What's up?" as designed to elicit an

incriminating response. Furthermore, Christman was not there to interrogate appellant about the allegations of incest made by appellant's stepdaughter; Christman was not even aware of those allegations at that time. He was simply responding to a disturbance call and appellant's wife's concern that he would harm himself. Under *Fairchild*, *Weber*, and *Innis*, the trial court's ruling that the statements were admissible was correct and is affirmed.

### III. Admissibility of Similar Allegations by Victim Against Another Person

For his final point on appeal, appellant asserts that the trial court erred in denying him the ability to question the victim about allegations of sexual abuse she purportedly made against her father and grandfather. Appellant apparently wished to question the victim on this point to somehow demonstrate that the allegations she made were motivated by her desire to secure her mother's consent to marry her boyfriend. Appellant had filed a motion under the rape-shield statute to admit evidence of the victim's prior allegations of sexual abuse against her father and grandfather. He maintains that the trial court abused its discretion by refusing to allow him to question the victim on this point.

The State asserts, among other things, that this Court should refuse to reach the merits of appellant's argument because appellant failed to proffer the evidence he sought to be admitted. *See Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002). We agree that appellant has failed to submit a proffer, and we affirm for that reason. We have held that when challenging the exclusion of evidence, a party must make a proffer of the excluded evidence at trial so that this Court can review the decision, unless the substance of the evidence is apparent from the context. *Id.* Without a proffer of the substance of her purportedly inconsistent statements, the victim's prior allegations against others cannot fairly be said to be relevant to impeaching her credibility. As such, we hold that, without the proffer, appellant has failed to preserve his argument regarding the evidence he sought to admit.

Affirmed.

CORBIN, J., not participating.