Alfred Lavorice BROWN *v.* STATE of Arkansas

CR 07-1178                                    288 S.W.3d 226

Supreme Court of Arkansas
Opinion delivered October 2, 2008

*Wright & Van Noy*, by: *Herbert T. Wright, Jr., P.A.*, for appellant

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Alfred Lavorice Brown, appeals the judgment of the Pulaski County Circuit Court convicting him of second-degree sexual assault and sentencing him as a habitual offender to imprisonment for 276 months. On appeal, Appellant argues the trial court erred in denying his motions for directed verdict and continuance. The Arkansas Court of Appeals issued a three division, 5-4 opinion finding there was sufficient evidence to support the judgment but that the trial court erred in denying Appellant's motion for a continuance. *Brown v. State*, 100 Ark. App. 172, 265 S.W.3d 772 (2007). The court of appeals accordingly reversed and remanded for a new trial. The State then petitioned this court for review of the court of appeals' decision, contending it was inconsistent with our prior case law on issues that are in need of clarification. We granted the State's petition for review pursuant to Arkansas Supreme Court Rule 1-2(e). When we grant review of a decision by the court of appeals, we review the case as though the appeal was originally filed in this court. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007). Upon such review, we find no error and affirm the judgment of conviction.

Appellant was charged by felony information with four counts of sexual crimes against two children. Appellant was charged with two counts of rape and one count of second-degree sexual assault against A.B., his biological daughter who was approximately eight to ten years old at the time of the alleged crimes. Based on facts discovered while the State was preparing for trial, the State amended the information to include one count of rape of D.A., the then-nine-year-old daughter of Appellant's live-in girl-friend. All four counts were tried together. The jury acquitted Appellant of the three rape charges and found him guilty of second-degree sexual assault.

### Sufficiency of the Evidence

For his first point for reversal, Appellant contends the trial court erred in denying his motion for a directed verdict. At the close of the State's case, Appellant moved for a directed verdict on the charge of second-degree sexual assault on the basis that there was insufficient and inconsistent evidence of sexual contact with the victim, A.B. Appellant renewed his motion at the close of all the evidence. The trial court denied both motions.

We treat the denial of a motion for directed verdict as a challenge to the sufficiency of the evidence. *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996). The test for determining the suffi-

ciency of the evidence is whether there is substantial evidence to support the verdict. *Id*. Evidence is substantial if, when viewed in the light most favorable to the State, it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id*. Matters such as evaluating a witness's credibility and resolving inconsistencies in the evidence are issues for the jury and not the court. *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001). On appellate review, it is permissible to consider only that evidence that supports the guilty verdict. *Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003).

A rape victim's testimony may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Gatlin v. State*, 320 Ark. 120, 895 S.W.2d 526 (1995). The rape victim's testimony need not be corroborated, nor is scientific evidence required, and the victim's testimony describing penetration is enough for a conviction. *Id*. The principle that a victim's uncorroborated testimony constitutes substantial evidence to support a guilty verdict is likewise true with respect to sexual offenses other than rape. *See, e.g., Arnett*, 353 Ark. 165, 122 S.W.3d 484 (incest); *Laughlin v.State*, 316 Ark. 489, 872 S.W.2d 848 (1994) (sexual solicitation).

The crime at issue here is sexual assault in the second degree, which is defined as a person eighteen years of age or older, engaging in sexual contact with another person who is less than fourteen years old and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3) (Repl. 2006). "Sexual contact" is defined as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(9) (Repl. 2006).

The following evidence, as viewed most favorably to the State, was presented at trial. Amberlea Anderson testified that she and her children, including her daughter D.A., lived with Appellant and his children, including A.B., for part of 2004. During that time, Ms. Anderson heard A.B. talking to A.B.'s mother on the phone about a rape incident with Appellant. Ms. Anderson stated that the phone conversation gave her cause for concern, so she spoke with A.B. about it. Two days later, although she continued to date Appellant, Ms. Anderson and her children moved from Appellant's home.

A.B. was eleven when she testified at trial. She stated that while she was living with Appellant and Ms. Anderson, Appellant would sometimes "undress me, and just try to put him in — put his private part in me." When asked to describe her father's private part, she replied that it looked like "[a] pole." When asked where Appellant put his private part, she replied, "[i]n my behind." A.B. added that "[s]ometimes he would put it in — by my — my private part." A.B. stated that her father did this more than twice, sometimes in the living room and sometimes in the bathroom.

A.B. testified further that, prior to the assault that occurred while she lived with her father and Ms. Anderson, her father assaulted her while A.B. lived with her mother. A.B. stated that Appellant "would come in and touch me while my mom slept." When asked how Appellant touched her, A.B. replied, "[h]e would rub on my behind."

A.B. testified that after her father sexually assaulted her, she began having back pain and problems going to the restroom. She stated that her grandmother took her to the doctor for these problems. Dr. Becky Latch, a pediatrician who was qualified as an expert in child abuse and sexual abuse, testified that she examined A.B. in the Arkansas Children's Hospital emergency room in January 2005. Dr. Latch remembered A.B.'s grandmother bringing her in with complaints of possible sexual abuse. Dr. Latch stated that A.B.'s exam was normal, with no findings to confirm sexual abuse. However, she explained that, because the anal and vaginal tissues heal so quickly, even in cases where there is an admission of penetration, only six to ten percent of children examined for sexual abuse will actually show physical signs to confirm such abuse. Dr. Latch explained further that the constant trauma of putting something in the anus can actually damage the nerves so that a child will not recognize when he or she needs to have a bowel movement, which can lead to constipation and back pain.

Although there was other evidence presented at trial from both sides, we need not repeat it here because the foregoing testimony of the victim that Appellant "would rub on my behind," and that he put his private part "[i]n my behind," is substantial evidence to support the guilty verdict of sexual assault in the second degree. Even though Appellant denied the allegations of sexually assaulting his daughter, the jury is not required to believe his self-serving testimony. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). Although the prosecuting witness contradicted her testimony, and although her credibility may have been called

into question, the jury was free to believe all or part of her testimony and disbelieve Appellant's assertions. *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). Furthermore, while it is true, as Appellant points out, that A.B.'s testimony was at times inconsistent, the issue of a witness's inconsistent statements is a matter of credibility left to the jury's discretion. *Kitchen v. State*, 271 Ark. 1, 607 S.W.2d 345 (1980). Where the jury as trier of fact has given credence to inconsistent testimony, this court will not reverse unless the testimony is inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Id.* None of those three circumstances exists here.

In sum, the victim testified that Appellant committed the crime. There is no requirement of corroboration, and the credibility of the evidence and any inconsistencies therein were for the jury to resolve. The victim's testimony was substantial evidence to support the jury's finding of guilt. The trial court therefore did not err in denying Appellant's motion for directed verdict.

### *Motion for Continuance*

Appellant's second point for reversal is that the trial court erred by denying his motion for a continuance or change of trial date due to the unavailability of a witness. A review of the procedural history is helpful to an understanding of Appellant's argument.

On January 10, 2006, Appellant requested and received a continuance until March 7-8, 2006, because he had been appointed new trial counsel. His previous counsel had developed a conflict as a result of plea negotiations with A.B.'s mother. On March 3, 2006, Appellant requested and received another continuance until May 10-11, 2006, because the State had recently amended the information to include the fourth count involving an additional victim, D.A.

On March 7, 2006, Appellant filed a motion for continuance of the jury trial, which was still set for May 10-11, 2006. Attached to the motion was an affidavit from Appellant's trial counsel stating that an essential witness, Investigator Lenore Paladino of the Crimes Against Children Division of the Arkansas State Police, was unavailable to testify on May 10-11, 2006. The affidavit stated further that, Investigator Paladino was an essential witness for the defense who investigated one of the rape counts in 2004 and, if available, could "testify to the inconsistencies and untruths in the statement of the alleged victim."

Thereafter in court on March 24, 2006, Appellant orally moved for a continuance or a change of trial date either for the week before or the week after May 10-11, 2006. Appellant's trial counsel elaborated on the written motion stating that while preparing for trial she discovered information that was not in the file the State had given her — that Investigator Paladino had investigated A.B.'s allegations in 2004 and determined them to be unsubstantiated. Trial counsel further explained that Investigator Paladino was unavailable for trial on May 10-11, 2006, and that she was an essential witness because she could "talk about the inconsistencies in the statement, the fact that there was no penetration alleged," and "some falsehoods regarding some other incidents." The State responded that it would not be prejudiced by a change of date, especially if the date was moved forward, but reminded the court that May 22 would be the nine-month deadline set by Arkansas Code Annotated section 16-10-130 (Repl. 1999) and Administrative Order No. 5 for trying defendants charged with sex crimes against victims under age fourteen. The trial court denied Appellant's request, stating counsel should subpoena Investigator Paladino and then it would be up to her to have the subpoena quashed. The trial court went on to state "[i]f it's something that's really dire that she can't get out of, then the Court might reconsider, but at this point, the Court's going to leave it where it is and it's up to her to be here pursuant to her subpoena."

At the omnibus hearing on April 11, 2006, the motion for continuance came before the court yet again. Appellant obtained an affidavit from Investigator Paladino explaining why she could not be present for trial on May 10-11, 2006.[1] The trial court concluded the matter by stating, "[w]ell, you might try getting her video testimony. The Court is denying the Motion to continue."

On the morning of trial, Appellant again renewed his motion for continuance, noting the court had already denied it. Appellant stated that Investigator Paladino had been subpoenaed, but that she was not present. Appellant therefore proffered Investigator Paladino's thirteen-page report of her investigation of

---

[1] Investigator Paladino's affidavit was marked as Defendant's Exhibit Number 1 for identification; however, the affidavit itself is not included in the addendum. While Investigator Paladino's affidavit is necessary to our determination of this issue, we need not allow rebriefing to cure the deficiency because the substance of the affidavit is available elsewhere in the abstract and appendix. Furthermore, the affidavit is included in the record, and this court may go to the record to affirm. *McGehee v. State*, 344 Ark. 602, 43 S.W.3d 125 (2001).

A.B.'s 2004 rape allegations against both her brother and Appellant, wherein she concluded the allegations against both family members were unsubstantiated.

Appellant acknowledges that a motion for continuance is addressed to the sound discretion of the trial court and that its judgment will not be reversed on appeal in the absence of a clear abuse of that discretion. *Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005). Appellant also acknowledges that the burden of establishing such abuse falls squarely on his shoulders. *Id.* This court explained further the applicable standard of review as follows:

> An appellant must not only demonstrate that the trial court abused its discretion by denying the motion for a continuance but also must show prejudice that amounts to a denial of justice. *See Cherry v. State*, 347 Ark. 606, 66 S.W.3d 605 (2002).
>
> Our criminal rules provide that a court shall grant a continuance "only upon a showing of good cause and only for so long as necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." Ark. R. Crim. P. 27.3 (2004). In addition, our Practice, Procedure, and Courts Code sets forth additional requirements when the continuance is requested due to the absence of evidence or a witness:
>
>> (a) . . . If the motion is for an absent witness, the affidavit must show what facts the affiant believes the witness will prove and not merely show the effect of the facts in evidence, that the affiant himself believes them to be true and that the witness is not absent by the consent, connivance, or procurement of the party asking the postponement.
>
> Ark. Code Ann. § 16-63-402(a) (1987).
>
> This court in its case law has also identified several factors for the circuit court's consideration in deciding a continuance motion: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove but also that the appellant believes them to be true. *See, e.g., Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997).

*Stenhouse*, 362 Ark. at 488-89, 209 S.W.3d at 358.

It is clear from our foregoing review of the procedural history in this case that Appellant satisfied the requirements of Arkansas Code Annotated section 16-63-402(a) (Repl. 2005). His trial counsel was not only diligent in filing the motion and affidavit, but also in repeatedly bringing the matter to the trial court's attention well in advance of trial. It is also clear from the motion and counsel's arguments to the trial court that Appellant demonstrated the probable effect of the testimony; counsel repeatedly stated that Investigator Paladino was an essential witness because she investigated A.B.'s prior complaint of sexual abuse against Appellant and found it to be unsubstantiated. It is likewise clear, however, that the trial court was required to and did consider other factors such as the public's interest in the prompt disposition of the case. *See* Ark. R. Crim. P. 27.3; *see also* Ark. Code Ann. § 16-10-130.

In any event, Appellant's argument on this point fails, as he has not met his burden of showing prejudice from the denial because the missing testimony was cumulative of other evidence presented at trial. The jury had before it ample evidence of A.B. making inconsistent statements about Appellant's alleged abuse of her, as well as evidence of those allegations being determined as unsubstantiated. Furthermore, the jury also had before it evidence of A.B. making allegations of physical abuse against other persons that were determined false or unsubstantiated.

Norvella Watson, Appellant's mother, testified that while A.B.'s parents were separated, A.B. made an allegation of sexual abuse against Appellant that was investigated by an officer from the Arkansas State Police, whom she believed to be named Paladino. Ms. Watson stated that she talked to A.B. about that investigation and the following occurred:

A. — yes. She said, "I told a story." And I asked her, "Does that mean you lied?" She said, "Yes."

Q. Did she say why?

A. She said she wanted to live with her mom and her — and I asked her where did she come up with the — with something like that to say, and she said her Aunt Kimmie told her to go to the counselor and tell her, and they'll let her go live with her mom. ˙

Thus, it is clear that, even in the absence of testimony from Investigator Paladino herself, the jury heard testimony that Investigator

Paladino investigated A.B.'s allegations of abuse against Appellant and that A.B. lied about the allegation.

In addition to the foregoing testimony concerning the missing witness's investigation, Ms. Watson also testified to a false allegation of physical abuse A.B. made against her brother. Ms. Watson stated that during that same time period, she saw an incident with A.B. and her brother that caused her concern. Ms. Watson stated:

> She wanted a toy that Harold had. He wouldn't give it to her. And she threw herself to the floor, and let her head hit the floor. It scared me, because she really hit it hard. He started crying "Grandma, I didn't do it." She said, "He pushed me down. He hit me." And Harold said, "Grandma, I swear, I didn't — I didn't hit her." I said, "I know you didn't, I was watching." Because I was standing behind the counter fixing their food, and she didn't see me. She had her back to me.

Although the trial court sustained the State's relevance objection to further testimony on this subject, the jury was not instructed to disregard the foregoing testimony. The jury therefore had before it even more evidence of A.B. making false accusations.

The jury also knew that during the times relevant to this case, another State Police investigator had concluded that A.B. made unsubstantiated claims of physical abuse against a foster parent. Investigator Dana Dusha of the Crimes Against Children Division of the Arkansas State Police, testified for the defense that he investigated a complaint that originated from A.B.'s elementary school concerning a slap on A.B.'s face by her foster mother. Investigator Dusha testified that he interviewed the alleged offender as well as other foster children in the home. He stated he did not find any witnesses or marks on A.B. to corroborate the allegation and determined the allegation to be unsubstantiated.

The foregoing three pieces of evidence render cumulative any testimony Investigator Paladino may have given. First, the substance of Ms. Watson's testimony was essentially the same as the pertinent information in Investigator Paladino's report. Ms. Watson's testimony was in some respects even more probative of A.B.'s credibility because it contained an admission by A.B. that she lied. Second, Ms. Watson testified to an incident wherein A.B. made a false accusation of physical abuse against her brother. Third, an Arkansas State Police Officer testified to an unsubstan-

tiated allegation of physical abuse A.B. made against her former foster mother. We therefore conclude that, because the jury had before it evidence that A.B. previously made claims of abuse that no one believed, including Investigator Paladino, Appellant was not prejudiced by the trial court's denial of his motion for continuance. Our conclusion is consistent with *Stenhouse*, 362 Ark. 480, 209 S.W.3d 352, where this court held prejudice was not shown by a denial of a continuance to obtain a witness when there was similar testimony offered at trial.

Because we are affirming the judgment of Appellant's conviction, it is not necessary to address the State's contention that Investigator Paladino's testimony would have been inadmissible under the rape-shield statute.

The judgment of the circuit court is affirmed; the decision of the court of appeals is reversed.

WILLS, J., not participating.