SLIP OPINION

Cite as 2014 Ark. App. 574

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–14–77

| | | |
|---|---|---|
| | | **OPINION DELIVERED** OCTOBER 29, 2014 |
| WADE COLLINS | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-2013-671] |
| V. | | |
| | | HONORABLE BARRY A. SIMS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Wade Collins appeals from the Pulaski County Circuit Court's denial of his motions to suppress evidence filed in conjunction with his conditional plea on charges of possession of cocaine with purpose to deliver, possession of drug paraphernalia, possession of marijuana with purpose to deliver, and possession of firearms by a certain person, for which he was sentenced as a habitual offender to 216 months' imprisonment on each charge to be served concurrently. He argues that the officers' failure to provide *Miranda* warnings prior to his custodial interrogation requires the exclusion of all statements and evidence obtained during the search of his residence and storage units. We affirm.

On December 6, 2012, appellant arrived at his residence while it was being searched by several Little Rock Police Department officers pursuant to a search warrant. After appellant approached the officers to determine what they were doing, a patrol officer asked

SLIP OPINION

for his name. After giving his name, but before appellant could leave, an officer said, "Hold him." Appellant remained on the porch, allegedly not knowing whether he was free to leave, but without asking whether he was required to stay. Patrol officers sat with appellant on his porch until he was questioned by Detective Mark Welborn.

Detective Welborn had been actively investigating appellant prior to December 6, 2012, and as a result, he learned that appellant had sold cocaine and utilized a storage unit related to the sale of this cocaine. Detective Welborn was part of the group of officers searching the residence when appellant arrived. He wanted to search the storage units as well and attempted to get appellant's consent during the initial discussion. Detective Welborn questioned appellant about the existence of a storage unit at the U-Haul facility, and appellant confirmed his rental of a storage unit. Detective Welborn asked to search the unit; appellant agreed, and Detective Welborn directed appellant to get into the back of a patrol car to ride to the storage facility. Appellant was not instructed on whether he was free to leave, and there is no indication that he was permitted to take his own car. It is undisputed that neither Detective Welborn nor any other officer gave appellant *Miranda* warnings at that time.

Upon arriving at the U-Haul facility, appellant signed a consent form for the search of unit 600. The unit was opened, and no contraband was found. Detective Welborn testified that he gave appellant *Miranda* warnings at this time; however, the record indicates that he failed to document these warnings in his report despite acknowledging both the relevance and his habit of doing so.

Detective Welborn then instructed an assisting officer to go to the front office and determine whether appellant had any other storage units. Officers learned of a second storage unit, number 556, and confronted appellant about its existence. Appellant confirmed its existence, but, according to him, he initially denied giving consent to search it. Detectives Mark Welborn and Stephen Montgomery, however, testified that appellant consented to the search of storage unit 556. The consent to search also included a written notation for unit 556; however, this notation was not written by Detective Welborn nor was it initialed or signed by appellant. Appellant eventually agreed to open the unit but, according to him, only after Detective Welborn said he would tear off the padlock of the unit if appellant did not open it. Appellant was not told that he could voluntarily leave the storage facility, and officers remained in close proximity to him throughout the search.

Detectives Welborn and Montgomery testified that appellant admitted to having marijuana and cocaine in storage unit 556 before it was opened. Upon the discovery of the drugs, appellant was handcuffed and taken to the police station. Detective Welborn presented appellant with written *Miranda* warnings at that time. Appellant denied being given *Miranda* warnings at any time prior to his arrival at the station, and Detective Welborn's position regarding the *Miranda* warnings was consistent with that of Detective Montgomery, who had assisted Detective Welborn's and had remained within close proximity to appellant throughout the search at the U–Haul facility.

On review of a circuit court's decision on a motion to suppress evidence obtained by a warrantless search, this court makes an independent determination based upon the totality

SLIP OPINION

of the circumstances, giving respectful consideration to the findings of the circuit court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Consistent with this standard, this court defers to the superior position of the circuit court to determine the credibility of witnesses and to resolve evidentiary conflicts, but resolves legal questions through an independent determination on the totality of the circumstances. *James v. State*, 2012 Ark. App. 118, 390 S.W.3d 95. The circuit court is not required to believe the testimony of any witness, certainly not the self-serving testimony of the accused. *Bell v. State*, 2010 Ark. App. 813, 379 S.W.3d 748. Arkansas's appellate courts have never wavered from the longstanding rule that it is the province of the circuit court to determine the credibility of witnesses. *Welch v. State*, 364 Ark. 324, 219 S.W.3d 156 (2005). The circuit court's ruling will not be reversed unless it is clearly erroneous. *Gonder v. State*, 95 Ark. App. 144, 234 S.W.3d 887 (2006). In addition, this court may affirm an order denying a suppression motion for a reason different from that relied upon by the court below. *Kimery v. State*, 63 Ark. App. 52, 973 S.W.2d 836 (1998).

Appellant argues that the officers' failure to provide *Miranda* warnings to him prior to the custodial interrogation requires the exclusion of all statements and evidence obtained during the search of his residence and the U–Haul facility. The Fifth Amendment to the United States Constitution provides, in part, that "no person . . . shall be compelled in any criminal case to be a witness against himself."[1] Accordingly, pursuant to the protections of the Fifth Amendment, "preinterrogation warnings are required in the context of custodial

---

[1]*See also* U.S. Const. amend. IV; Ark. Const. art. II, § 15.

SLIP OPINION

interrogations given 'the compulsion inherent in custodial surroundings.'" *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004) (quoting *Miranda v. Arizona*, 384 U.S. 436, 458 (1965)). *Miranda* warnings, therefore, are necessary at the time of a custodial interrogation. *Hall v. State*, 361 Ark. 379, 206 S.W.3d 830 (2005). In the absence of such warnings, "the [State] may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation . . . ." *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980); *see also Shelton v. State*, 287 Ark. 322, 699 S.W.2d 728 (1985) (holding that, once in custody, no interrogation is allowed absent the *Miranda* warnings and a knowing, voluntary waiver).

In interpreting the parameters of the term "custody," the United States Supreme Court has stated that

> the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. . . .
>
> [*Stansbury* explained that, "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Courts must examine "all of the circumstances surrounding the interrogation" and determine "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action."]

*Yarborough*, 541 U.S. at 662–63 (internal citations omitted); *see also Hall*, 361 Ark. at 389, 206 S.W.3d at 837. Additionally, in considering "interrogation," the United States Supreme Court provides as follows:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . A practice

SLIP OPINION

that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Innis*, 446 U.S. at 301–02.

A suspect's voluntary or spontaneous statement, even though made in police custody, is admissible against him. *Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003) (holding that it is irrelevant whether the statement, if in fact spontaneous, was made before or after *Miranda* warnings had been issued, or whether appellant was in custody). However, a statement made while a suspect is in custody is presumptively involuntary. *Id.* The State bears the burden of proving by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Id.* Statements made by a suspect in response to custodial interrogation are inadmissible unless the suspect is given *Miranda* warnings and intelligently waives those rights. *Id.*

In *Shelton*, *supra*, our supreme court reversed and remanded a conviction based on the circuit court's failure to grant a motion to suppress certain statements made by the defendant during a custodial interrogation. In *Shelton*, an officer came to the defendant's home and awoke him using a P.A. system. The defendant, a minor, eventually came out of the home and was placed in a police car. The defendant and the officer remained alone in the police car, and the officer told the defendant of the seriousness of the crime (murder) and asked if defendant knew anything about it or could help locate the suspects. The defendant then stated, "We did it," and "We were there." *Id.* at 327, 699 S.W.2d at 730. In evaluating the

6

totality of the circumstances, our supreme court held that the defendant was in custody and interrogated; moreover, our supreme court held that his statements were not spontaneous. The *Shelton* court reversed the circuit court's denial of the motion to suppress because the officer had failed to provide *Miranda* warnings prior to the statements. *Id*. at 333, 699 S.W.2d at 734.

Appellant claims that Detective Welborn likewise violated his constitutional rights by failing to provide *Miranda* warnings at the time of appellant's custodial interrogation. Appellant urges that it was at the point of their initial conversation at his residence that Detective Welborn, who was armed with the belief that appellant possessed cocaine at a storage unit, began his interrogation. Detective Welborn questioned appellant about a storage unit he already believed to be relevant to his investigation, which appellant maintains Detective Welborn did to avoid the trouble of obtaining another warrant. Appellant claims that the interrogation continued when he was asked to ride to the U-Haul facility in the back of a patrol car. *See Gorman v. State*, 366 Ark. 82, 233 S.W.3d 622 (2006) (holding that interrogation in a police car is a significant factor in finding a custodial interrogation).

It is undisputed that neither Detective Welborn nor any other officer provided *Miranda* warnings either at appellant's residence or while escorting appellant to the U-Haul facility in a patrol car. Appellant contends that those failures to provide *Miranda* warnings during the custodial interrogation at his residence and in the patrol car violated his constitutional right against self-incrimination and require the suppression of all statements and

7

SLIP OPINION

subsequent evidence obtained in the search of storage unit 556 resulting from the custodial interrogation.

Appellant also contends that the circuit court erred to the extent it found that he was Mirandized at any point prior to being handcuffed and transported to the police station. Appellant testified that he was not Mirandized at his residence or at the U-Haul facility and that Detective Montgomery confirmed appellant's testimony concerning an absence of *Miranda* warnings at the U-Haul facility. The only contradictory evidence presented was Detective Welborn's testimony that he provided *Miranda* warnings to appellant at the U-Haul facility, the veracity of which was undermined by his admission that he left this relevant and routinely included information out of his report.

We hold that under the specific facts of this case the circuit court did not clearly err by denying appellant's motion to suppress. Appellant's arguments rely solely on the allegation that he was in custody from the moment he arrived at his residence during the execution of the search warrant on his residence. He disregards, however, the extent of his voluntary interaction in answering the officers' questions, providing additional information related to the storage units, accompanying them to the storage units, consenting to the searches, and assisting in opening the units.

Appellant's statements in response to officers' questions and the subsequent search of the storage units did not violate his constitutional rights because he did not expressly invoke the privilege against self-incrimination in response to officers' questions and gave his consent to the search. Detective Welborn testified that he told appellant that he was not under arrest

8

and that he was unaware that any officer might have said he should be held while at the residence. Although Detective Welborn did not indicate that he told appellant he was free to leave, there is also nothing in the record supporting that appellant asked or indicated to the officers that he wanted to leave. This court has consistently held that it is the objective circumstances that this court reviews on appeal rather than the subjective views harbored by the parties. *James, supra.*

We hold that, under these facts, the circuit court could have determined that a reasonable person in appellant's circumstances would believe that he was not in custody. *See Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518 (1988). Although custody may occur under circumstances in which the suspect is deprived of his freedom of movement and not only upon formal arrest, this court must consider the totality of the circumstances as a reasonable person would understand them to be. *See James*, *supra.*

We note that appellant was charged as a habitual offender; accordingly, the circuit court could reasonably infer that he had some previous knowledge about police procedures. According to Detective Welborn, appellant was not in custody until after the contraband had been found, and he was placed in handcuffs and formally arrested. Despite appellant's testimony that an officer said to "hold him" when appellant arrived at his house, Detective Welborn testified that he was not aware that any officer had made that statement. Likewise, appellant voluntarily accompanied the officers to the storage facility without requesting alternative transportation. After considering the testimony concerning all of the attendant

circumstances, the circuit court reasonably could have concluded that appellant was not in custody.

Because of the circuit court's factual determination that appellant was not in custody, appellant was not entitled to *Miranda* warnings prior to his arrest. *See Gardner*, *supra* (interpreting that the argument that *Miranda* warnings are required whenever an investigation has focused on a person, notwithstanding a complete absence of the compulsive aspect of custodial interrogation, has been flatly rejected). To reiterate, this court defers to the superior position of the circuit court to determine credibility of the witnesses and resolve evidentiary conflicts and may reject the self-serving testimony of the accused. *James*, *supra*.

Detective Welborn testified that he later gave *Miranda* warnings to appellant and went over a consent-to-search form with him before conducting a search of his storage unit. The circuit court ruled without explanation that appellant's motions to suppress were denied, and thus likely determined that appellant's testimony was not credible. This court is not at liberty to disturb the circuit court's credibility determinations on appeal. *Gonder*, *supra*. We hold that the circuit court did not clearly err by finding the testimony of Detective Welborn about the circumstances to be more credible than that of appellant in ultimately denying his suppression motions.

Appellant could have told Detective Welborn that he did not want to answer any questions, but he failed to do so. It has long been settled that the privilege against self-incrimination "generally is not self-executing" and a witness who desires its protection "must claim it." *Salinas v. Texas*, 133 S. Ct. 2174, 2178 (2013). Despite appellant's

SLIP OPINION

argument to the contrary, the express-invocation requirement applies even when an official has reason to suspect that the answer to his question would incriminate the witness. *Id.*

Furthermore, forfeiture of the privilege against self-incrimination need not be knowing. *See Salinas*, 133 S. Ct. at 2183. Appellant did not decline to answer any of the officers' questions; therefore, he relinquished his right to claim the privilege. Additionally, there is nothing in the record to show that officers prevented appellant from invoking his right to the privilege against self-incrimination. So long as police do not deprive a witness of the ability to voluntarily invoke the privilege, there is no Fifth Amendment violation. *Salinas*, 133 S. Ct. at 2184. Because appellant did not invoke the privilege, the circuit court did not err by concluding that appellant's statements to police were voluntary.

Regarding our review of appellant's consent to search the storage units, the State has the burden of proving by clear and positive testimony that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion. *McIntosh v. State*, 296 Ark. 167, 753 S.W.2d 273 (1988); Ark. R. Crim. P. 11.1(b) (2012). Whether the consent was voluntary is a question of fact to be determined from all the circumstances. *Welch*, *supra*. The circuit court's finding of voluntariness will not be set aside unless it is clearly against the preponderance of the evidence. *Duncan v. State*, 304 Ark. 311, 802 S.W.2d 917 (1991). And, while the circuit court may take into consideration whether a defendant knew he had the right to refuse consent in determining voluntariness, it is not a

conclusive factor. *Id*. In fact, this court has specifically noted that knowledge of the right to refuse consent to search is not a requirement to prove voluntariness of consent. *Id*.[2]

We also find no merit in appellant's argument that, due to the officers' failure to give him *Miranda* warnings, the contraband seized from the storage unit should have been suppressed as "fruit of the poisonous tree." In *Oregon v. Elstad*, 470 U.S. 298 (1985), the United States Supreme Court addressed this issue, holding that the "fruit of the poisonous tree" doctrine assumes the existence of a constitutional violation of the Fourth Amendment's prohibition against unreasonable search or seizure, which is different from an allegation, such as appellant's here, of the Fifth Amendment right against self-incrimination.

Appellant admitted to Detective Welborn that he had a storage unit. That admission is not an incriminating statement because renting a storage unit is not a criminal offense. Detective Welborn asked appellant for consent to go to the storage facility and search the unit, and appellant consented. Detective Welborn requested that appellant ride to the storage facility in the officer's vehicle. Appellant could have refused, or could have asked if there were other transportation alternatives, such as having a friend drive him. The record reflects that appellant neither objected to riding with the officer, nor requested an alternative. Rather, he voluntarily got into the officer's vehicle. *See generally Shields v. State*, 348 Ark. 7, 70 S.W.3d 392 (2002) (whether a person is required to be informed of the freedom to leave is only one factor to be considered under the totality of the circumstances in a case

---

[2]Under Ark. R. Crim. P. 11.1(c), the Arkansas Supreme Court has not extended knock-and-talk principles beyond residences. *See Welch, supra*.

SLIP OPINION

where a person was handcuffed and transported to police station in police car). At the storage facility, appellant signed a consent-to-search form and opened the initial storage unit. There is testimony in the record before us that was deemed credible supporting that appellant consented both to going to the storage facility with the officers and to the search of his storage unit.

Subsequently, and in part because of a discrepancy in the unit numbers appellant gave Detective Welborn, Detective Welborn sent an officer to the storage-facility office to determine if appellant had other units in the facility. Upon his return the officer stated, and appellant verified, that he also rented unit number 556. Although disputed by appellant, the officers' testimony indicated that appellant also consented to the search of unit 556. Furthermore, appellant unlocked unit 556 and volunteered information to the officers, indicating that they would find drugs in a red cooler inside the unit. Based on appellant's statements and his action in unlocking the unit, the circuit court reasonably could have concluded that appellant consented to the search and, further, could have found that appellant's allegation, that the officer threatened to break the lock if he did not open it, was not credible.

We hold that the circuit court's denial of appellant's motion to suppress was not clearly erroneous because (1) testimony could support officers' theory that appellant was not under arrest during the investigation; (2) appellant voluntarily responded to officers' questions and did not object to riding to the storage facility in the police car or seek alternative

13

transportation; (3) appellant's words and actions indicated that he consented to the search of his storage units.  Accordingly, we affirm

Affirmed.

PITTMAN and WYNNE, JJ., agree.

*Digby Law Firm*, by:  Bobby *R. Digby II*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.