Cite as 2020 Ark. App. 439

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR-19-928

| | |
|---|---|
| JAMES MADISON SPEAKS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** September 30, 2020<br><br>APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT<br>[NO. 15CR-00-155]<br><br>HONORABLE DAVID H. MCCORMICK, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

Appellant James Madison Speaks appeals from the denial of his petition to terminate his obligation to register as a sex offender. For reversal, appellant argues that the trial court erred in finding that he failed to demonstrate that he was not likely to pose a threat to the safety of others. We affirm.

On April 10, 2001, appellant pleaded no contest to third-degree carnal abuse, a Class D felony. He was sentenced to five years' probation and required to register as a sex offender. Appellant filed a petition for relief from registration on May 25, 2017. In support of his petition, he alleged that he had been registered since 2001; he had fully complied with all court and probation orders; he had been rehabilitated and had not reoffended since his 2001 plea; and he could prove by a preponderance of the evidence that his registration requirement should be terminated. The State responded asking that the petition be denied.

A hearing took place on August 2, 2019. Appellant testified that he resides in Hot Springs and had lived at the same home for about two years. He had previously lived in Atkins. He had been in his current employment with Berry Global for almost a year but had worked for Bemis for about ten years prior thereto. He had been married to Aundrea Speaks for almost two years and had been in a relationship with her for between two and two and a half years prior to marriage. Aundrea has three children—two boys and a girl—ages 16, 13, and 11. He said he has a wonderful relationship with his stepchildren as well as their father, Michael Morgan, indicating they have family nights, take family vacations, and spend holidays together. Appellant testified that he informed Michael about his case, his history, and the sex-offender registry.

He explained that he pleaded no-contest to third-degree carnal abuse in April 2001 and has been registering as a sex offender since July 2001. He testified that he received sixty months' probation, which he never violated, and had not had any convictions for sex offenses since 2001. He said he completed sex-offender counseling while on probation and completed his GED. Appellant testified that he did not pose any threat to the safety of others and had shown a pattern of consistency for eighteen years "following rules" and "doing what's right." He explained that he was currently a Level 3 on the registry and had been at that level the entire time despite his attempts to object to the Level 3 status.

On cross-examination, appellant testified that he was first assessed in 2001 as a Level 3 sex offender. He was reassessed in 2008 and remained a Level 3. He requested to be reassessed in 2017 in preparation for filing the petition to terminate his obligation. When confronted with the 2017 assessment indicating he was not taking responsibility for his sex

offenses and denying having had sexual contact with his sister, he replied that he did not have sexual contact with his sister but admitted he had told law enforcement back in 2000 or 2001 that he had sexual contact with her. He also acknowledged having admitted to investigators and the assessment officers in 2001 that he had sexual contact with another child [T.D.].[1] Appellant also admitted that in 2003, after being placed on probation, the Arkansas Department of Human Services made a true finding of maltreatment with his sister as the victim. After an unsuccessful appeal, appellant was put on the maltreatment registry.

On redirect, when asked why he would give a statement to law enforcement that he did something he did not actually do, appellant explained:

> I was a teenager at the time and I was scared. And I was basically handed a situation where, you know, you get 40 years in prison or do you want probation and that's what I was told. If you admit to it, we'll give you probation, and of course, I didn't know any better. I didn't know how the legal system worked at the time, so that's what I went with.

Aundrea Speaks testified in support of appellant's petition. She confirmed that appellant has a good relationship with her children and is involved in their day-to-day activities. Aundrea also testified that she, appellant, and her ex-husband, Michael, have a close relationship, which included family nights, family dinners, and spending holidays together. She discussed appellant's criminal history with Michael, who voiced no problems with appellant being around the children. Aundrea said that appellant has never acted in a way that would cause her any concern that he might do anything inappropriate with her

---

[1]The official version of the sex-offense section of the risk-assessment report indicates that TD had a full-scale IQ of 48 and was functioning at a preschool level according to the special-education department of the Conway County School District.

3

children. She did not agree with appellant's being at Level 3 status, and it did not concern her for the safety of others around him.

Michael Morgan testified that Aundrea informed him of appellant's situation when she first met appellant. Before the children met appellant, he and Aundrea waited about six months before introducing the children to him to be sure of his character. Michael said he did not have any concerns with appellant being around the children or his Level 3 status or that appellant would pose a threat to anyone else in the community.

The last witness to testify was Sheri Flynn, the administrator of the sex-offender-assessment program. She stated her office is responsible for assessing all sex offenders in Arkansas who are required to register and is familiar with appellant's case. Sheri testified that appellant had been assessed three times—2001, 2009, and 2017. Each time, he was assigned a Level 3 on a scale of Levels 1 through 4, with 1 being the lowest level and 4 being the highest. She indicated that a Level 1 requires reporting to people living in the offender's home and local law enforcement; a Level 2 requires notification to people living near the offender outside his home who may have people within his victim range; and a Level 3 requires notification to people living in the community. Sheri said that if appellant was not required to register, there would be absolutely no community notification. She identified the 2017 assessment report, which was the basis for the Level 3 assessment.

On cross-examination, Sheri stated that her program handles assessment but does not keep up with registration. She said the assessment is made up of the interview, which lasts a couple of hours; criminal records; and child-maltreatment records. She added that there are historical documents that are part of the file, such as the psychological evaluation

4

performed by Linda Josef, who was hired by appellant. Sheri stated that Josef opined that appellant did not have any diagnosable mental-health disorders and did not appear to be at an elevated risk for future sexual offense. Sheri agreed with Josef's indication that appellant does not appear to suffer from any mental illness and stated she is aware that appellant had not had any criminal convictions since 2001. Sheri acknowledged that she never had any personal contact with appellant and that the assessment was prepared by Leslie White, the supervising psychologist who assigned the final level.

The trial court took the case under advisement and entered an order on August 15, 2019. Relying on the pleadings filed in the matter, testimony given, exhibits introduced, and arguments of counsel, the trial court denied appellant's petition. Appellant filed a timely notice of appeal on September 13.

Arkansas Code Annotated section 12–12–919(b)(1)(A)(i)(a) (Supp. 2019) states: "Any other sex offender [meaning a person not required to report for a lifetime] required to register under this subchapter may apply for an order terminating the obligation to register to the sentencing court fifteen (15) years after the date the sex offender first registered in Arkansas." Section 12–12–919(b)(2) provides that the court shall grant an order terminating the obligation to register upon proof by a preponderance of the evidence that "(A) The applicant, for a period of fifteen (15) years after the applicant was released from prison or other institution or placed on parole, supervised release, or probation has not been adjudicated guilty of a sex offense; and (B) The applicant is not likely to pose a threat to the safety of others."

We review the trial court's findings on a section 12–12–919(b) petition under a clearly erroneous standard of review. *See Stow v. State*, 2016 Ark. App. 84, 482 S.W.3d 752. A finding is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake was made. *Id.*

Recognizing that credibility determinations are the province of the trial court, appellant argues that less deference should be afforded in this case because there is no indication that the trial court found the witnesses at trial to be not credible. Here, the court was presented with the testimony of appellant, his wife, and her ex-husband, along with a 2017 risk-assessment report and criminal case file, to determine whether the appellant no longer posed a threat to the safety of others. The trial court is not required to believe the testimony of any witness. *Collins v. State*, 2014 Ark. App. 574, at 4, 446 S.W.3d 199, 203. Arkansas's appellate courts have never wavered from the longstanding rule that it is the province of the trial court to determine the credibility of witnesses. *Id.* The trial court simply weighed the evidence differently than the appellant desired.

Appellant also suggests that the trial court's "exclusive" reliance on the 2017 risk assessment in reaching its decision is in error, arguing that the court relied on the CADC's "true finding" regarding a 2003 molestation allegation. However, the trial court's order states the decision was "[b]ased upon the pleadings filed in this matter, testimony given, exhibits introduced, and arguments of counsel," and appellant's petition was denied.

Although appellant objected to the introduction of the 2017 risk-assessment report based on hearsay, appellant never obtained a ruling and does not challenge the introduction of the report in any manner on appeal. Failure to obtain a ruling on an issue at the trial court

6

level precludes review on appeal. *Sales v. State*, 374 Ark. 222, 231, 289 S.W.3d 423, 430 (2008).

Here, appellant, his wife, and her ex-husband testified that appellant does not pose a threat to the safety of others. Appellant acknowledged that he had been assessed three times, with the most recent in 2017 in preparation for his petition, and each time he was given a Level 3 assessment. He attempted to contest his assessment but was unsuccessful. In regard to the 2003 maltreatment case, appellant admitted there was a true finding that he maltreated his sister and that his appeal was unsuccessful, which resulted in him being placed on the maltreatment registry. The 2017 assessment indicates that he currently takes no responsibility for his sex offense and denies having had sexual contact with his sister, although he previously acknowledged his sex offense and sexual contact with his sister. The report indicated that appellant originally confessed because the police told him he would get probation. When asked why he would admit to offenses that he did not commit, he explained he was "scared," "didn't know how the legal system worked," and "didn't know any better."[2]

---

[2]The record reflects that appellant initially entered a negotiated guilty plea to the carnal-abuse charge on January 10, 2001, and was sentenced to forty-two months' imprisonment and was required to register as a sex offender. On February 12, his court-appointed attorney filed a motion to set aside the guilty plea, alleging in part that the attorney hired by appellant's father after his arrest, had not spoken to him prior to the day of the trial and that his advice to plead guilty was the result of counsel's being unprepared for trial. The circuit court granted the motion on February 28, 2012. Appellant subsequently entered a negotiated "no-contest" plea to carnal abuse and was sentenced to five years' probation and required to register as a sex offender.

In denying appellant's petition, the trial court considered the pleadings filed in the matter, testimony given, exhibits introduced, and arguments of counsel. The trial court weighed the credibility of his testimony along with the testimony of his wife and her ex-husband, alongside the 2017 assessment report to determine whether appellant no longer posed a threat to the safety of others. The court weighed the evidence in favor of the State. The appellate courts have long held that we defer to the trial court's superior position in determining the credibility of the witnesses. *State v. Miller*, 2013 Ark. 329. This court holds that the trial court did not clearly err in denying appellant's petition, and we affirm.

Affirmed.

VAUGHT and MURPHY, JJ., agree.

*Justin B. Hurst*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.